STATE OF NORTH CAROLINA v. RONALD LEE SMITH

No. COA02-945

(Filed 2 September 2003)

**1. Confessions and Incriminating Statements— Miranda warnings—motion to suppress—custodial interrogation**

The trial court did not err in a first-degree kidnapping, second-degree kidnapping, assault with a deadly weapon with intent to kill inflicting serious injury, common law robbery, felonious breaking or entering, and possession of a firearm by a con-

victed felon case by denying defendant's motion to suppress his 7 May 2001 statement to a detective, because: (1) defendant was not interrogated within the meaning of Miranda and Innis when a detective posed no questions to defendant but instead defendant questioned the detective, and defendant's statement was made after the detective responded to defendant's question; (2) the detective's factually correct answer called for no response on the part of defendant; and (3) there was no evidence that suggested either any prior knowledge on the part of the detective that defendant was unusually susceptible to any particular form of persuasion or that the detective's response was designed to elicit an incriminating response.

**2. Criminal Law— admissions—instruction**

The trial court did not err in a first-degree kidnapping, second-degree kidnapping, assault with a deadly weapon with intent to kill inflicting serious injury, common law robbery, felonious breaking or entering, and possession of a firearm by a convicted felon case by charging the jury on admissions pursuant to N.C.P.I. 104.60, because even if defendant's statement to a detective had not been admitted into evidence, the evidence was sufficient to support the instruction when defendant himself testified that he went to the victims' home on 23 March 2003, attempted to sell them meat, and engaged in a fistfight with the couple when they refused to buy meat from him.

**3. Appeal and Error— preservation of issues—failure to object—double jeopardy**

Although defendant contends the trial court erred by entering judgment against defendant for both first-degree kidnapping and assault with a deadly weapon with intent to kill inflicting serious injury based on the fact that his double jeopardy rights were allegedly violated, defendant waived appellate review of this issue because: (1) defendant did not move to dismiss the charge of first-degree kidnapping of the husband victim on double jeopardy grounds; (2) although the State indicated during the charge conference that the serious injury element would apply to both charges, defendant did not object; (3) defendant did not object to the submission of both the first-degree kidnapping and assault of the husband victim to the jury; and (4) even if this issue were properly preserved, double jeopardy does not preclude punishing a defendant for both first-degree kidnapping based on serious injury and assault with a deadly weapon with intent to kill inflict-

ing serious injury when each crime contains elements not required to be proved in the other.

**4. Kidnapping— first-degree—instruction—restraint—not expression of opinion**

The trial court did not express an opinion on the credibility of testimony on the restraint element of first-degree kidnapping by its instruction that "one who is physically seized and held or whose hands or feet are bound is restrained" within the meaning of the kidnapping statute when both victims had testified to being either handcuffed or tied up by defendant because: (1) the trial court specifically instructed the jurors that they were the sole judges of the credibility of the witnesses and were entitled to believe all, none, or any part of a witness's testimony; (2) as defendant conceded during the charge conference, the language relied on by the trial court in framing its definition of restraint reflected a correct statement of the law; and (3) the trial court properly brought the relation of the evidence adduced at trial into view with the particular issue involved.

**5. Appeal and Error— appealability—no right of appeal from guilty plea—attempted felonious escape**

The trial court did not err by entering judgment against defendant for attempted felonious escape even though defendant contends the bill of information to which he pled guilty failed to allege a felony in accordance with N.C.G.S. § 148-45, because: (1) by pleading guilty and failing to move to withdraw his plea, defendant is not entitled to an appeal of right from the trial court's ruling; (2) the issue of the sufficiency of the allegations contained in the charging instrument falls outside the scope of either N.C.G.S. § 15A-1444(a1), (a2), or N.C.G.S. § 15A-975; and (3) appeal of this issue may not be had by writ of certiorari.

**6. Appeal and Error— appealability—no right of appeal from guilty plea—committing felony after attaining status of habitual felon**

The trial court did not err by entering judgment against defendant under the second count of the bill of information for committing a felony after having attained the status of an habitual felon, because: (1) by pleading guilty to being an habitual felon and not having moved in the trial court to withdraw his guilty plea, defendant is not entitled to an appeal of right from the trial court's ruling; and (2) appeal of this issue may not be had by

**STATE v. SMITH**

[160 N.C. App. 107 (2003)]

writ of certiorari when the case does not involve an interlocutory order, the denial of a motion for appropriate relief, or a situation where the right to appeal has been lost by defendant's failure to take timely action.

**7. Sentencing— habitual felon status—indictment's failure to identify predicate felonies**

The indictment used to charge defendant with habitual felon status was sufficient to meet the requirements of N.C.G.S. § 14-7.3 even though defendant contends it does not identify any predicate felonies but only alleges defendant committed one or more felonious offenses while being an habitual felon, because nothing in the plain wording of the statute requires a specific reference to the predicate substantive felony in the habitual felon indictment.

Appeal by defendant from judgment entered 31 January 2002 by Judge Peter M. McHugh in Guilford County Superior Court. Heard in the Court of Appeals 10 June 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Allison S. Corum, for the State.*

*Parish & Cooke, by James R. Parish, for defendant-appellant.*

EAGLES, Chief Judge.

Defendant, Ronald Lee Smith, appeals from multiple convictions arising out of a series of events which included felonious breaking and entering and the kidnapping and robbery of Frank and Teri Little. The State's evidence tended to establish the following: On 23 March 2001, Frank and Teri Little left their home located at 4502 Briargrove Court in Greensboro, North Carolina at approximately 12:00 p.m. Frank Little went to meet a client for lunch. Teri Little went for a walk in an adjacent neighborhood. At approximately 1:10 p.m., Teri returned home alone. Teri parked her car in the driveway, entering the house by walking through the garage and into the kitchen. Once inside the door, Teri immediately noticed defendant, who was standing partially inside the sliding glass door located on the opposite side of the kitchen. When Teri asked defendant what he was doing in the house, defendant, a door-to-door sales representative for Omega Meats, mumbled that he was in the "wrong place." Defendant then said he was "with" someone else and began pointing outside. When Teri looked outside to see who defendant was referring to, defendant grabbed her, "swung [her] around," and handcuffed her hands behind

STATE v. SMITH

[160 N.C. App. 107 (2003)]

her back. Defendant then demanded Teri's money and purse. After Teri told defendant that she left her purse under the seat of her car, defendant led Teri into the master bedroom where he blindfolded her with a pair of sweat pants. Defendant then led Teri back into the kitchen, pushed her to the floor and instructed her not to move. Defendant left the house and went outside to retrieve Teri's purse. Defendant returned a few moments later, led Teri back into the master bedroom and removed the blindfold. Defendant emptied the contents of Teri's purse on the bed, removed both cash and credit cards and demanded the personal identification numbers for each credit card.

Frank Little returned at approximately 1:25 p.m. As Frank pulled into the driveway, he noticed a white truck parked with its engine running, in his next-door neighbor's driveway. The truck had a meat freezer in the back and was sitting approximately five yards away from the sliding glass door that led into the Littles' kitchen. As Frank went into the house, he called for Teri, walked toward the bedroom and called for her again. This time, both defendant and Teri appeared in the hallway. Teri's hands were still bound behind her back and defendant was standing behind her. When Teri tried to warn Frank of defendant's presence in the house, defendant punched Teri in the face, causing her eye to bleed. Defendant ordered Frank to his knees and then ordered Frank into the bedroom. When Frank failed to respond, defendant "reached into his left pocket" and said, "I'll shoot you both right here right now." After this, Frank complied with defendant's instructions.

Defendant ordered both Frank and Teri to lie face down on the bedroom floor. Defendant tied Frank's hands behind his back with a piece of nylon cord, took Frank's wallet and again demanded money. After Frank explained that he and Teri did not keep a lot of cash in the house, Frank directed defendant to a jewelry box where he kept a small amount of cash. Defendant took the money from the jewelry box. Defendant then covered Frank's head with a plastic shopping bag and tied it so that Frank was unable to breathe. When Teri saw Frank struggling to breathe, she began screaming: "You're killing him. You're killing him." Defendant turned to Teri and asked: "Do you want to do something about it?" Teri replied: "Yes." Defendant ordered Teri to "[g]et up," "[p]ull [her] pants down" and "bend over." Although Teri complied, once defendant discovered that Teri was menstruating, defendant abandoned any further attempt to have sexual intercourse with her. During this time, however, Frank managed to free himself

from his restraints and tear the bag off his head. Frank also found a knife lying in the bedroom.

Frank picked up the knife, stood up and tried to assist Teri. Defendant attacked Frank and the two men began wrestling for control of the knife. The altercation spilled into the hallway where defendant broke an empty wine bottle over Frank's head. As the struggle continued, defendant hit Frank twice in the head with a brass lamp. Defendant then picked up a heavy "glass vase" and "started pounding Frank in the back of the head." Teri began kicking defendant and begging him to stop, but defendant continued hitting Frank with the vase. Ultimately, Frank instructed Teri to "run." Teri, handcuffed and naked from the waist down, ran to a neighbor's house and called police. Shortly thereafter, defendant fled in the truck that was parked outside the sliding glass door. Frank required thirty-six surgical staples to close the wounds in the back of his head. Teri received stitches over her right eye as well as treatment for a broken finger that she sustained while being handcuffed.

After Frank and Teri identified defendant from a photo array, Greensboro police began surveillance on defendant's home. At approximately 9:00 p.m., defendant drove up to a house located three doors down from defendant's house. Defendant was driving a dark colored Dodge Neon and was followed by a woman who was driving defendant's truck. After stopping in front of the house, defendant got out of the Neon, walked back to the truck and sat in the truck's passenger seat. When police converged on the two vehicles, defendant escaped by fleeing into the woods on foot. Upon searching the Dodge Neon, police discovered a 9 millimeter pistol lying in the front passenger's seat. Defendant was arrested several days later, near his mother's home in White Plains, New York.

On 7 May 2001, while defendant was being held in the Guilford County Jail, Detective Timothy Sizemore of the Greensboro Police Department served defendant with an "order to hold without bond" from the Conover Police Department. While the two men were in the holding area of the magistrates's office, defendant began "questioning" Detective Sizemore about whether defendant's mother would be arrested as an accessory after the fact. When Detective Sizemore answered affirmatively, defendant became "extremely irate" and said: "Look, man, my mom is innocent. Just because I attacked two innocent people in Greensboro doesn't mean you have to charge innocent people." Defendant had not been advised of his *Miranda* warnings prior to making this statement.

STATE v. SMITH

[160 N.C. App. 107 (2003)]

On 17 July 2001, defendant's probation, which stemmed from a 16 September 2000 conviction for possession of a firearm by a felon, was revoked. Consequently, the suspended portion of defendant's sentence was activated and defendant began serving a sentence of 16 to 20 months in the North Carolina Department of Correction. On 16 January 2002, the second day of defendant's trial, defendant attempted to escape from the Guilford County Jail.

Defendant testified in his own defense that he went to the home of Frank and Teri Little on 23 March 2001 in an attempt to sell meat. Defendant testified that he knocked on the door and spoke to Teri Little, who told defendant that her husband was not home and that she did not make decisions without her husband. Teri instructed defendant to come back in twenty to thirty minutes. Defendant left and returned as instructed. This time, defendant spoke to Frank Little. When Frank refused to buy any meat, defendant hit Frank with his fist and a physical altercation followed. Defendant admitted hitting both Frank and Teri Little before leaving their residence, but denied all other alleged misconduct.

Defendant was convicted of: (1) first-degree kidnapping of Frank Little; (2) second-degree kidnapping of Teri Little; (3) assaulting Frank Little with a deadly weapon with intent to kill inflicting serious injury; (4) common law robbery of Teri Little; (5) common law robbery of Frank Little; (6) felonious breaking or entering; and (7) possession of a firearm by a convicted felon. After the jury returned its verdict, the State presented a bill of indictment alleging one count of committing a felony after having attained habitual felon status and a bill of information alleging one count of attempted felonious escape and one count of committing a felony after having attained habitual felon status. Defendant pled guilty to all three remaining charges and now appeals.

*I.*

**[1]** Defendant first contends that the trial court erred by denying the motion to suppress his 7 May 2001 statement to Detective Sizemore. Defendant argues that because Detective Sizemore should have known that his comments concerning potential charges against defendant's mother were reasonably likely to elicit an incriminating response, defendant was "interrogated" within the meaning of *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966). Defendant further argues that because Detective Sizemore never advised him of

his *Miranda* warnings, his statement was taken in violation of *Miranda* and inadmissible at trial. We disagree.

We first note that "[i]n superior court, the defendant may move to suppress evidence only prior to trial unless the defendant did not have reasonable opportunity to make the motion before trial or unless a motion to suppress is allowed during trial under [G.S. § 15A-975](b) or (c)." G.S. § 15A-975(a). Here, defendant did not move to suppress his statement prior to trial; rather, defendant only objected during trial and he objected only generally to the admission of the testimony. Notwithstanding defendant's apparent failure to comply with G.S. § 15A-975, the trial court conducted an evidentiary hearing following an unrecorded bench conference. Because the record is silent as to the trial court's basis for permitting defendant to make his motion for the first time at trial, we presume the trial court acted correctly. *See State v. Fennell*, 307 N.C. 258, 262, 297 S.E.2d 393, 396 (1982).

"The standard of review in evaluating a trial court's ruling on a motion to suppress is that the trial court's findings of fact 'are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting.' " *State v. Logner*, 148 N.C. App. 135, 137, 557 S.E.2d 191, 193 (2001) (citations omitted). However, because "[t]he determination of whether an interrogation is conducted while a person is in custody involves reaching a conclusion of law," this question is fully reviewable on appeal. *State v. Greene*, 332 N.C. 565, 577, 422 S.E.2d 730, 737 (1992). " 'The trial court's conclusions of law must be legally correct, reflecting a correct application of applicable legal principles to the facts found.' " *State v. Buchanan*, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001) (citations omitted).

"It is well established that *Miranda* warnings are required only when a [criminal] defendant is subjected to custodial interrogation." *State v. Patterson*, 146 N.C. App. 113, 121, 552 S.E.2d 246, 253, *disc. review denied*, 354 N.C. 578, 559 S.E.2d 549 (2001). Although the issue of whether defendant was in custody has not been raised, we note that "[a]n inmate . . . is not, because of his incarceration, automatically in custody for purposes of *Miranda*[.]" *State v. Briggs*, 137 N.C. App. 125, 129, 526 S.E.2d 678, 680 (2000).

"[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an

incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301, 64 L. Ed. 2d 297, 308 (1980).

> Factors that are relevant to the determination of whether police "should have known" their conduct was likely to [e]licit an incriminating response include: (1) "the intent of the police"; (2) whether the "practice is designed to elicit an incriminating response from the accused"; and (3) "any knowledge the police may have had concerning the unusual susceptibility of a defendant to a particular form of persuasion . . . ."

*State v. Fisher*, 158 N.C. App. 133, 142-43, 580 S.E.2d 405, 413 (2003) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 302, 64 L. Ed. 2d 297, 308 (1980) (fn. 7, 8)). Our Supreme Court has consistently held that "law enforcement officers can respond to questions posed by a defendant without violating *Innis* . . . ." *State v. Golphin*, 352 N.C. 364, 407, 533 S.E.2d 168, 200 (2000), *cert. denied*, 532 U.S. 931, 149 L. Ed. 2d 305 (2001). *See also, State v. McQueen*, 324 N.C. 118, 132, 377 S.E.2d 38, 46 (1989) (holding that neither an officer's "willingness to respond to defendant's questions," nor the "actual answers" to those questions could be equated with " 'words or actions . . . that [the officer] *should have known* were reasonably likely to elicit an incriminating response' ").

In *State v. Young*, 317 N.C. 396, 346 S.E.2d 626 (1986), a Guilford County Sheriff's detective served a non-testimonial identification order on defendant following defendant's arrest on charges of kidnapping and rape. The following colloquy took place when Detective Odum served the order on the defendant:

Defendant: What's this about?

Detective Od[u]m: This is to help you or to help us . . . .

Defendant: Why did you . . . believe her story instead of [mine]?

Detective Od[u]m: I believed her because of the evidence and because you lied to me about where you were that night.

Defendant: I lied because I knew you wouldn't believe the truth about me falling asleep in the car while she met another man in a car.

*Id.* at 406, 346 S.E.2d at 632. Detective Odum then told defendant that if defendant "wanted to tell the truth, [Detective Odum] would be

willing to listen." *Id.* at 405, 346 S.E.2d at 632. Defendant responded by saying: "I fell asleep in the car. She met another man in a car." *Id.* at 406, 346 S.E.2d at 632.

Defendant argued his statement was the product of custodial interrogation and should have been suppressed because Detective Odum never advised him of his *Miranda* warnings. Our Supreme Court disagreed, concluding that defendant was not "interrogated" according to *Innis*. The Court said:

> An examination of the conversation clearly shows that the statement was not elicited from the defendant as the result of questioning by Detective Odum. Detective Odum posed no questions to the defendant. Moreover, we do not feel that the defendant was subjected to the 'functional equivalent of questioning.' The defendant's statement—'I lied because I knew you wouldn't believe the truth about me falling asleep in the car while she met another man in a car'—was made in response to Detective Odum's comment that he believed Ms. Jenkins because of the evidence and the fact that the defendant had lied to him about his whereabouts on the night in question. Odum's comment did not require or call for a response on the part of the defendant. It simply cannot be said that Detective Odum should have known that this statement was reasonably likely to elicit an incriminating response from the defendant.

*Id.* at 408, 346 S.E.2d at 633.

Here, the only evidence presented on *voir dire* was Detective Sizemore's testimony that "[t]here had been some mention to [defendant] about his mother being arrested . . . [as an] accessory after the fact." Detective Sizemore further testified that he did not question defendant; rather, once the two were inside the magistrate's office, it was defendant who "began questioning" Detective Sizemore about whether his mother was likely to be charged. When Detective Sizemore answered defendant's question, defendant became "extremely irate" and stated: "Look, man, my mom is innocent. Just because I attacked two innocent people in Greensboro doesn't mean you have to charge innocent people." Following *voir dire*, the trial court entered findings of fact consistent with Detective Sizemore's uncontroverted testimony, concluded that defendant's statement was not obtained in violation of either the North Carolina or United States Constitutions and denied defendant's motion to suppress.

Applying *Young*, we conclude that defendant here was not interrogated within the meaning of *Miranda* and *Innis*. First, Detective Sizemore posed no questions to defendant; instead, it was defendant who questioned Detective Sizemore. Moreover, defendant's statement was made after Detective Sizemore responded to defendant's question. Detective Sizemore's terse, factually correct answer called for no response on the part of defendant. Finally, we cannot say that Detective Sizemore should have known that his answer was likely to elicit an incriminating response from defendant. There is no evidence in the record that suggests either any prior knowledge on the part of Detective Sizemore that defendant was unusually susceptible to any particular form of persuasion or that Detective Sizemore's response was designed to elicit an incriminating response. Because defendant was not subjected to custodial interrogation, we hold the trial court properly denied defendant's motion to suppress. Accordingly, this assignment of error is rejected.

## II.

**[2]** Defendant next contends that the trial court erred in charging the jury on admissions pursuant to N.C.P.I. 104.60.

During the charge conference, the State requested that the trial court instruct the jury "that the defendant admitted a fact charged in th[e] case." Defendant objected to the instruction. The trial court overruled defendant's objection and instructed the jury in pertinent part:

> Ladies and gentlemen, during the course of the trial which has been conducted, evidence has been received which tends to show that the defendant has admitted one or more facts relating to the crimes charged in this case. If you find that the defendant did make such an admission, then you should consider all of the circumstances under which that admission was made in determining whether it was a truthful admission and the weight that you will give to it.

Defendant argues that because the evidence concerning his 7 May 2001 statement to Detective Sizemore was improperly admitted, it was error to instruct the jury on admissions. We disagree.

The trial judge is required to " 'fully instruct the jury as to the law based on the evidence in the case.' " *State v. Moore*, 26 N.C. App. 193, 194, 215 S.E.2d 171, 172 (citation omitted), *cert. denied*, 288 N.C. 249, 217 S.E.2d 673 (1975).

Here, we have already concluded that defendant's statement to Detective Sizemore was properly admitted into evidence. However, even if defendant's statement to Detective Sizemore had not been admitted into evidence, an instruction on admissions was still proper. Defendant himself testified that he went to the Little's home on 23 March 2003, attempted to sell both Teri and Frank Little meat and engaged in a fistfight with the couple when they refused to buy meat from him. Since this evidence was in and of itself sufficient to support the instruction, this assignment of error fails.

## III.

[3] Defendant next contends that the trial court erred by entering judgment against him for both first-degree kidnapping (01 CrS 23477) and assault with a deadly weapon with intent to kill inflicting serious injury (01 CrS 23480). Citing *State v. Belton*, 318 N.C. 141, 347 S.E.2d 755 (1986), *overruled on other grounds, State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *cert. denied*, 522 U.S. 900, 139 L. Ed. 2d 177 (1997), defendant argues that because he was convicted of assault with a deadly weapon with intent to kill inflicting serious injury against the kidnap victim, elevation of the kidnapping to the first degree based on the same injuries, violates the constitutional prohibition against double jeopardy. After careful consideration, we disagree.

In order to preserve a question for appellate review, a party must present the trial court with a timely request, objection or motion, stating the specific grounds for the ruling the party desires, and obtain a ruling from the trial court. N.C.R. App. P. 10(b)(1). A criminal defendant waives appellate review of the issue of whether his conviction of first-degree kidnapping violates double jeopardy by failing to "object at trial to the submission of first-degree kidnapping" on the same grounds. *State v. Fernandez*, 346 N.C. 1, 18, 484 S.E.2d 350, 361 (1997).

Here, a careful review of the transcript reveals that at the close of all the evidence, defendant moved to dismiss the charge of first-degree kidnapping of Teri Little (01 CrS 23478) on double jeopardy grounds. However, despite participating in an extensive discussion with the trial judge concerning all potential bases to support the motion, including the very grounds argued here, defendant did not move to dismiss the charge of first-degree kidnapping of Frank Little on double jeopardy grounds. Furthermore, during the charge conference, the trial judge specifically inquired into which "enhancement elements" the State was proceeding on to support first-degree kid-

napping. Although the State indicated that the "serious injury" element would apply to both charges, defendant did not object. Finally, defendant did not object to the submission of both the first-degree kidnapping and assault of Frank Little to the jury. Accordingly, we hold defendant has waived appellate review of this issue.

Assuming *arguendo* that this issue was properly before us, we would hold that double jeopardy does not preclude punishing a defendant for both first-degree kidnapping based on serious injury and assault with a deadly weapon with intent to kill inflicting serious injury.

In *State v. Fernandez*, 346 N.C. 1, 484 S.E.2d 350 (1997), the defendant was convicted of both first-degree murder and first-degree kidnaping based on failure to release the kidnap victim in a safe place. Our Supreme Court, applying the *Blockburger* test, held that because "each crime charged contain[ed] an element not required to be proved in the other[,]" defendant could be convicted of both without violating double jeopardy. *Id.* at 19, 484 S.E.2d at 362.

Here, defendant was convicted of both first-degree kidnapping and assault with a deadly weapon with intent to kill inflicting serious injury. The offense of kidnapping is established upon proof of an unlawful, nonconsensual restraint, confinement or removal of a person from one place to another, for the purpose of: (1) holding the person for ransom, as a hostage or using them as a shield; (2) facilitating flight from or the commission of any felony; or (3) terrorizing or doing serious bodily harm to the person. *See* G.S. § 14-39(a). "If the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree . . . ." G.S. § 14-39(b). In contrast, the essential elements of assault with a deadly weapon with intent to kill inflicting serious injury are "(1) an assault, (2) with a deadly weapon, (3) with intent to kill, (4) inflicting serious injury, (5) not resulting in death." *State v. Reid*, 335 N.C. 647, 654, 440 S.E.2d 776, 780 (1994). Because each crime contains elements not required to be proved in the other, applying *Fenandez*, we would hold that defendant's convictions for both offenses are proper.

## IV.

[4] Defendant next contends that the trial court erroneously instructed the jury regarding the restraint element of first-degree kidnapping. The trial court instructed the jury in pertinent part:

**STATE v. SMITH**

[160 N.C. App. 107 (2003)]

> Now, for you to find the defendant guilty of first-degree kidnapping, the State must prove five things to you beyond a reasonable doubt:

> First, that the defendant unlawfully restrained a person. That is, restricted his freedom of movement. *One who is physically seized and held or whose hands or feet are bound is restrained within the meaning of this statute.*

(Emphasis added.)

Defendant argues that because both victims testified to being either handcuffed or tied up by defendant, the trial court's inclusion of the italicized language in its instructions to the jury constituted an impermissible expression of the trial judge's opinion that (1) the victims' testimony was credible, and (2) the testimony conclusively established the element of restraint. We disagree.

G.S. § 15A-1232 provides in part that "[i]n instructing the jury, the judge shall not express an opinion as to whether or not a fact has been proved . . . ." In determining whether the trial judge has expressed an impermissible opinion in its instructions to the jury, " '[t]he charge of the court must be read as a whole, in the same connected way that the judge is supposed to have intended it and the jury to have considered it.' " *State v. Lee*, 277 N.C. 205, 214, 176 S.E.2d 765, 770 (1970) (citation omitted). "The trial judge has wide discretion in presenting the issues to the jury." *State v. Harris*, 306 N.C. 724, 728, 295 S.E.2d 391, 393 (1982).

> The chief object contemplated in the charge of the judge is to explain the law of the case, to point out the essentials to be proved on the one side and on the other, and to bring into view the relation of the particular evidence adduced to the particular issue involved.

*State v. Friddle*, 223 N.C. 258, 261, 25 S.E.2d 751, 753 (1943). "[W]here a trial court, in charging a jury, undertakes the definition of a term that the law provides no set formula for defining, 'the definition given should be in substantial accord with definitions approved by our Supreme Court.' " *State v. Every*, 157 N.C. App. 200, 214, 578 S.E.2d 642, 652 (2003) (citation omitted). Where the charge, viewed contextually, "presents the law fairly and clearly to the jury, the fact that some expressions, standing alone, might be considered erroneous will afford no ground for reversal." *Lee*, 277 N.C. at 214, 176 S.E.2d at 770.

STATE v. SMITH

[160 N.C. App. 107 (2003)]

In *State v. Fulcher*, 294 N.C. 503, 243 S.E.2d 338 (1978), our Supreme Court held:

> As used in G.S. 14-39, the term 'confine' connotes some form of imprisonment within a given area, such as a room, a house or a vehicle. The term 'restrain,' while broad enough to include a restriction upon freedom of movement by confinement, connotes also such a restriction, by force, threat or fraud, without a confinement. Thus, *one who is physically seized and held, or whose hands or feet are bound,* or who, by the threatened use of a deadly weapon, is restricted in his freedom of motion, *is restrained within the meaning of this statute.* Such restraint, however, is not kidnapping unless it is (1) unlawful (i.e., without legal right), (2) without the consent of the person restrained (or of his parent or guardian if he be under 16 years of age), and (3) for one of the purposes specifically enumerated in the statute. One of those purposes is the facilitation of the commission of a felony.

*Id.* at 523, 243 S.E.2d at 351 (emphasis added).

After reviewing the entire jury charge, in context, we conclude there was no error. First, the trial judge specifically instructed the members of the jury that they were "the sole judges of the credibility of the witnesses," entitled to believe all, none or any part of a witness's testimony. Next, the language relied on by the trial court in framing its definition of "restraint" reflects a correct statement of the law; a point which defendant conceded during the charge conference. Finally, after defining "restraint" as it applied to the charge of kidnapping, the trial judge proceeded to instruct the jury on the remaining elements of kidnapping. We disagree with defendant's assertion that these instructions had the effect of establishing both the credibility of the victims' testimony and the element of restraint. On the contrary, we hold the trial judge, through his instructions, properly brought the relation of the evidence adduced at trial into view with the particular issue involved. Accordingly, this assignment of error is rejected.

V.

[5] Defendant next contends that the trial court erred by entering judgment against him for attempted felonious escape because the bill of information to which he pled "fail[ed] to allege a felony" in accordance with G.S. § 148-45.

On 16 January 2002, the second day of trial, defendant attempted to escape from the Guilford County Jail. After the jury returned its verdict, the State presented a two-count bill of information (No. 02 CrS 23218) charging defendant with: (1) attempted felonious escape in violation of G.S. § 148-45; and (2) committing a felony after having attained habitual felon status. Defendant pled guilty to both charges and the trial court entered judgment.

Defendant assigns error to the failure of the bill of information to "allege a felony as required by statute[,]" contending that the allegations contained in the bill of information "support[] no more than a misdemeanor" conviction. Defendant supports this contention by arguing that the "recitation of facts by the prosecutor to support the plea" established only that defendant was in the custody of the Guilford County Jail at the time of his escape attempt and not the Department of Correction. Consequently, defendant asserts that he is entitled to appeal as a matter of right pursuant to G.S. § 15A-1444(a1) and (a2). We disagree.

We begin by noting that although G.S. § 15A-1444(a1) permits a defendant to appeal "the issue of whether his . . . sentence is supported by evidence introduced at the trial and sentencing hearing[,]" the scope of appellate review is "confined to a consideration of those assignments of error set out in the record on appeal . . . ." N.C.R. App. P. 10(a). Here, defendant has assigned error only to the sufficiency of the allegations contained in the bill of information. Accordingly, our review is limited.

It is the general rule that "a defendant is not entitled to appellate review as a matter of right when he has entered a plea of guilty to a criminal charge in the superior court unless he is appealing sentencing issues or the denial of a motion to suppress." *State v. Nance*, 155 N.C. App. 773, 774, 574 S.E.2d 692, 693 (2003). G.S. § 15A-1444(e) provides in pertinent part that:

> Except as provided in subsections (a1) and (a2) of this section and G.S. 15A-979, and except when a motion to withdraw a plea of guilty or no contest has been denied, the *defendant is not entitled to appellate review as a matter of right when he has entered a plea of guilty* or no contest to a criminal charge in the superior court, but he may petition the appellate division for review by writ of certiorari.

(Emphasis added.)

**STATE v. SMITH**

[160 N.C. App. 107 (2003)]

Here, defendant pled guilty to the charges presented in the bill of information. However, defendant did not move to withdraw his plea. By "plead[ing] guilty . . . and not having moved in the trial court to withdraw his guilty plea, defendant is not entitled to an appeal of right from the trial court's ruling." *State v. Young*, 120 N.C. App. 456, 459, 462 S.E.2d 683, 685 (1995). Moreover, the issue from which appeal is taken, *i.e.*, the sufficiency of the allegations contained in the charging instrument, falls outside the scope of either G.S. §§ 15A-1444(a1), (a2) or 15A-975. Therefore, even if defendant had moved to withdraw his plea, defendant would not be entitled to appeal. Accordingly, we conclude that defendant is not entitled to appeal this issue as a matter of right.

Finally, this Court may only issue the *writ of certiorari* to review judgments and orders of trial tribunals in instances where: (1) "the right to prosecute an appeal has been lost by failure to take timely action"; (2) "no right of appeal from an interlocutory order exists"; or (3) "for review pursuant to G.S. 15A-1422(c)(3) of an order of the trial court denying a motion for appropriate relief." N.C.R. App. P. 21(a)(1). *Accord, State v. Dickson*, 151 N.C. App. 136, 564 S.E.2d 640 (2002). Because none of these circumstances applies to the case here, we conclude that appeal of this issue may not be had by *writ of certiorari*. Accordingly, we hold that defendant is not entitled to appeal from this judgment.

## VI.

[6] Defendant next contends that the trial court erred by entering judgment against him under the second count of the bill of information (No. 02 CrS 23218), for committing a felony after having attained the status of a habitual felon. Defendant argues that the single bill of information used here failed to comply with G.S. § 14-7.3, which requires two separate charging instruments.

As we have already noted, by "plead[ing] guilty to being an habitual felon, and not having moved in the trial court to withdraw his guilty plea, defendant is not entitled to an appeal of right from the trial court's ruling." *Young*, 120 N.C. App. at 459, 462 S.E.2d at 685. Similarly, because this case does not involve an interlocutory order, the denial of a motion for appropriate relief, or a situation where the right to appeal has been lost by defendant's failure to take timely action, review may not be had by *writ of certiorari*. Accordingly, we hold defendant is not entitled to appeal from this judgment.

*VII.*

[7] Defendant next contends that because the indictment charging habitual felon status (01 CrS 23576), "does not identify any predicate felonies, but rather only alleges the defendant 'did commit one or more felonious offenses while being an habitual felon[,]' " it fails to comply with the format and allegation requirements of G.S. § 14-7.3. We disagree.

> Nothing in the plain wording of N.C.G.S. § 14-7.3 requires a specific reference to the predicate substantive felony in the habitual felon indictment. The statute requires that the State give defendant notice of the felonies on which it is relying to support the habitual felon charge; nowhere in the statute does it mention the predicate substantive felony or require it to be included in the indictment.

*State v. Cheek,* 339 N.C. 725, 728, 453 S.E.2d 862, 864 (1995). Here, the indictment charging defendant as an habitual felon complies with the requirements of G.S. § 14-7.3 in all respects. Accordingly, this assignment of error is rejected.

*VIII.*

Defendant's final contention is that since the habitual felon indictment is defective, the trial court erred by enhancing the sentences in defendant's remaining convictions. Because we have already concluded that the indictment charging defendant as an habitual felon was proper in all respects, this assignment of error is rejected.

We hold that defendant received a fair trial, free from prejudicial error.

No error.

Judges TYSON and STEELMAN concur.