STATE OF NORTH CAROLINA v. HARRY GOODMAN, III, Defendant

No. COA03-541

(Filed 17 August 2004)

## Confessions and Incriminating Statements— violation of Miranda warnings—exclusion of physical evidence not required

The trial court did not err in a first-degree murder case by denying defendant's motion to suppress physical evidence including the victim's body, an autopsy report, and other derivative evidence obtained as the result of an interrogation in violation of defendant's Miranda rights, because: (1) when a statement to law enforcement is not actually coerced but nonetheless obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), or *Edwards v. Arizona*, 451 U.S. 477 (1981), the statement itself must be suppressed but physical evidence obtained as a result of the violation need not be; (2) the importance of ensuring that all relevant evidence be submitted to the jury outweighs the need to exclude evidence that was gathered as the result of a noncoercive statement made in violation of the rule of *Miranda* as extended by *Edwards*, and the deterrent value of the rule is satisfied by the exclusion of the statement; and (3) the Court of Appeals is bound by *State v. May*, 334 N.C. 609 (1993), and *May* is consistent with *United States v. Patane*, 159 L. Ed. 2d 667 (2004), which held that the fruit of the poisonous tree doctrine does not apply to failures to give Miranda warnings, since this case and May did not involve a failure to give Miranda warnings but rather addressed postwarning violations.

Appeal by defendant from judgment entered 13 January 2003 by Judge Michael Helms in Montgomery County Superior Court. Heard in the Court of Appeals 4 February 2004.

*Attorney General Roy Cooper, by Assistant Attorney General Amy C. Kunstling, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Constance E. Widenhouse, for defendant-appellant.*

GEER, Judge.

Defendant pled guilty to first degree murder, but appeals from the trial court's denial of his motion to suppress physical evidence obtained as the result of an interrogation that arguably violated his rights under *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966) and *Edwards v. Arizona*, 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880 (1981). Because we are bound by *State v. May*, 334 N.C. 609, 611-12, 434 S.E.2d 180, 181 (1993), *cert. denied*, 510 U.S. 1198, 127 L. Ed. 2d 661, 114 S. Ct. 1310 (1994), we affirm.

## Factual Background

At 9:30 p.m. on 9 April 1999, Montgomery County sheriff's deputies responded to a call directing them to the home of Bobby Wade Freeman. When law enforcement arrived, they found a large bloodstain on the living room carpet and a bloody coat against the front door, but no sign of Mr. Freeman. The sheriff's department issued a 50-mile radius "look-out" for Mr. Freeman's truck. A deputy discovered it on the shoulder of a road with defendant slumped in the driver's seat, a "crack" cocaine pipe between his legs. The truck seat appeared to be stained with blood.

Defendant was searched and taken into custody. Three credit cards bearing Mr. Freeman's name were in his pocket. Lt. Chris Poole transported defendant to the sheriff's office and advised him of his *Miranda* rights. After signing a waiver of those rights, defendant admitted stealing Mr. Freeman's truck and using his credit cards, but denied killing Mr. Freeman. Defendant was charged with cocaine possession and taken before a magistrate to set bond. While riding with Lt. Poole in an elevator to the jail, defendant told Lt. Poole that he would not answer any more questions until he spoke with an attorney.

The sheriff's department and other organizations began searching for Mr. Freeman, focusing initially on the area around Mr. Freeman's home and then searching outward in a spiral pattern. On 14 April 1999, when police had still failed to find Mr. Freeman, Lt. Poole and SBI Special Agent John Reid removed defendant from the jail and

took him across the street to Lt. Poole's office. They told him they were not going to question him about the murder, but that they had information he had killed Mr. Freeman and might know where the body was. Defendant told them he "did not want to die over this" and said he would take the officers to the body.

Defendant rode with Lt. Poole and Agent Reid in a patrol car, directing them to the end of Odessa Road, a dead-end road about five miles from where defendant was arrested. Mr. Freeman's body was located 10 to 12 feet off the road in a sparsely wooded area. The body was covered by a blanket, a plastic tarp, and branches.

Defendant filed a pretrial motion to suppress his statements to Lt. Poole and Agent Reid and to suppress the physical evidence obtained as a result of those statements, including Mr. Freeman's body, the autopsy report, and other derivative evidence. At a hearing on 9 September 2002, the trial court found that Lt. Poole and Agent Reid took defendant into their custody on 14 April 1999 and "caused the defendant to make statements, both oral and non-verbal, in violation of his *Miranda* and constitutional rights." The court allowed defendant's motion to suppress his oral and non-verbal statements, but denied his motion to suppress the physical evidence based on the inevitable discovery exception to the exclusionary rule. On 13 January 2003, pursuant to a plea agreement in which he reserved his right to appeal the partial denial of his motion to suppress, defendant was sentenced to life in prison without parole.

## Discussion

The standard of review in evaluating a trial court's ruling on a motion to suppress is that the trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting. *State v. Smith*, 160 N.C. App. 107, 114, 584 S.E.2d 830, 835 (2003). If the trial court's conclusions of law are supported by its factual findings, we will not disturb those conclusions. *State v. Logner*, 148 N.C. App. 135, 138, 557 S.E.2d 191, 193-94 (2001).

The State does not dispute that defendant's statements to Lt. Poole and Agent Reid regarding the location of Mr. Freeman's body were obtained in violation of his rights under *Miranda* and *Edwards*. Defendant argues that the physical evidence obtained as a result of those statements is, therefore, "fruit of the poisonous tree" and should have been suppressed under the exclusionary rule. Our Supreme Court has held, however, in *State v. May*, 334 N.C. 609, 434

S.E.2d 180 (1993), that when a statement to law enforcement is not actually coerced but nonetheless obtained in violation of *Miranda* or *Edwards*, the statement itself must be suppressed, but physical evidence obtained as a result of the violation need not be. *Id.* at 612, 434 S.E.2d at 182.

In *May*, the defendant signed a waiver of his *Miranda* rights, but invoked his right to counsel after the officers started interrogating him. Two days later, officers persuaded the defendant's girlfriend to call defendant. As a result of questions suggested by the officers, the defendant told his girlfriend where he had hidden items related to a murder. These statements led the officers to a knife, a pair of gloves, and a gag. In upholding the trial court's denial of a motion to suppress the physical evidence, the Supreme Court held:

> If the record shows there was no actual coercion but only a violation of the *Miranda* warning requirement, it is not necessary to give too broad an application to the exclusionary rule. The statement which is obtained by the violation of the *Miranda* rule must be excluded but some evidence which is obtained as a result of the violation does not have to be excluded.

*Id.* The Court reasoned that the importance of ensuring that all relevant evidence be submitted to the jury "outweighs the need to exclude evidence which was gathered as the result of a non-coercive statement made in violation of the prophylactic rule of *Miranda* as extended by *Edwards*." *Id.* at 613, 434 S.E.2d at 182. The Court concluded that "[t]he deterrent value of the rule is satisfied by the exclusion of the statement made as a result of the *Miranda* or *Edwards* violations." *Id.*

This case is materially indistinguishable from *May*. Because, however, of our Supreme Court's emphasis in *May* on the prophylactic nature of *Miranda*, the continued viability of its holding was arguably called into doubt by *Dickerson v. United States*, 530 U.S. 428, 147 L. Ed. 2d 405, 120 S. Ct. 2326 (2000), which held that *Miranda* was a constitutional rule and not just prophylactic. *See State v. Phelps*, 156 N.C. App. 119, 125 n.1, 575 S.E.2d 818, 822 n.1 (2003), *rev'd*, 358 N.C. 142, 592 S.E.2d 687 (2004). In light of the United States Supreme Court's recent decision in *United States v. Patane*, —— U.S. ——, 159 L. Ed. 2d 667, 124 S. Ct. 2620 (2004), we conclude that *May* is still controlling.

In *Patane*, a three-judge plurality held that the "fruit of the poisonous tree" doctrine does not apply to failures to give *Miranda*

warnings. *Id.* at ——, 159 L. Ed. 2d at 680, 124 S. Ct. at 2631. Although *May*, like this case, did not involve a failure to give *Miranda* warnings, but rather addressed post-warning violations, the reasoning of Justices Kennedy and O'Connor, concurring in the judgment, suggests that *May* is consistent with *Patane*. Justice Kennedy stressed that *Dickerson* did not undermine the Court's prior precedents and specifically pointed to cases involving post-warning *Miranda* violations, including *Oregon v. Elstad*, 470 U.S. 298, 84 L. Ed. 2d 222, 105 S. Ct. 1285 (1985) and *Michigan v. Tucker*, 417 U.S. 433, 41 L. Ed. 2d 182, 94 S. Ct. 2357 (1974)—the primary authority upon which *May* relied. In addition, the plurality and the concurrence both embraced a weighing analysis identical with that of *May*. As Justice Kennedy stated, "In light of the important probative value of reliable physical evidence, it is doubtful that exclusion can be justified by a deterrence rationale sensitive to both law enforcement interests and a suspect's rights during an in-custody interrogation." *Patane*, —— U.S. at ——, 159 L. Ed. 2d at 680, 124 S. Ct. at 2631.

Accordingly, we are still bound by *May*. Under *May*, the trial court properly denied the motion to suppress the physical evidence. We do not, therefore, need to reach the question whether this evidence should have been excluded under the inevitable discovery doctrine.

Affirmed.

Chief Judge MARTIN and Judge STEELMAN concur.