STATE OF NORTH CAROLINA v. WESLEY TATE PICKARD, DEFENDANT

No. COA05-1414

(Filed 5 July 2006)

**Search and Seizure— warrant—information not stale—items still useful to defendant—dates of sexual offenses against children**

An affidavit is sufficient to support a search warrant if it establishes reasonable cause to believe that the proposed search will probably reveal the presence upon the described premises of the items sought and that those items will aid in the apprehension or conviction of the offender. The affidavit here, supporting the warrant to search the house of a man eventually convicted of multiple sexual offenses against children, was not invalid as containing stale information.

Appeal by Defendant from judgments entered 27 April 2005 by Judge A. Leon Stanback in Superior Court, Alamance County. Heard in the Court of Appeals 6 June 2006.

*Attorney General Roy Cooper, by Assistant Attorney General Anne M. Middleton, for the State.*

*Anne Bleyman for defendant-appellant.*

WYNN, Judge.

Under North Carolina law, warrants must be based on probable cause which in turn must be supported by an affidavit "particularly setting forth the facts and circumstances establishing probable cause to believe that the items are in the places or in the possession of the individuals to be searched[.]"[1] In this case, Defendant argues that the affidavit supporting the warrant to search his house was invalid because it contained stale information. As events alleged in the affidavit show on-going criminal activity by Defendant, and the items to

1. N.C. Gen. Stat. § 15A-244(3) (2005).

be seized were of continued utility to Defendant, we hold that a reasonably prudent magistrate could determine that probable cause existed to support the warrant to search Defendant's home.

On 1 September 2004, Sergeant Detective Pete Acosta applied for and received a search warrant to search Defendant's residence, along with any outbuildings on the curtilage and any vehicle. The warrant authorized seizure of, *inter alia,* any computers, computer equipment and accessories, any cassette videos or DVDs, video cameras, digital cameras, film cameras and accessories, and photographs or printed materials which could be consistent with the exploitation of a minor.

This warrant, executed on 1 September 2004, was supported by an affidavit tending to show the following facts: On 31 August 2004, Crystal Sharpe, a detective with the Graham Police Department, received a telephone call from a stepmother regarding inappropriate touching of her seven-year-old stepson by Defendant Wesley Tate Pickard. The seven-year-old child disclosed to Detective Sharpe that Defendant had rubbed his penis on top of his underwear on approximately six or seven occasions. He stated that Defendant would place him on the bed and lay him on his back and rub his genital area. Defendant instructed the seven-year-old child not to tell anyone. The seven-year-old child also told Detective Sharpe that Defendant had done the same thing to his friend, a six-year-old male, approximately four times. After the interview, the seven-year-old child's parents expressed concern about inappropriate digital photographs that Defendant had taken of some of their children.

The six-year-old male told Detective Sharpe that he had been in Defendant's home on several occasions and that Defendant had touched him. The six-year-old male remembered that Defendant would lie in bed with him and other children, all in their underwear, and watch television.

The three-year-old sister of the six-year-old male told Detective Sharpe that Defendant had taken pictures of her "in a costume that he had at his house." She also told the detective that Defendant took lots of pictures and videos and kept them under his bed "so no one can see them."

A fifteen-year-old female told Detective Sharpe that Defendant had penetrated her vagina with his finger and penis on several occasions. Defendant videotaped her in the shower without her knowledge, took photographs of her naked while she was sleeping, and sent

them to people over the internet. The fifteen-year-old female knew Defendant used the Yahoo screen name "Wild Wild Wes." She described Defendant's penis as uncircumcised and told Detective Sharpe that these incidents took place two years prior when she was fourteen years old. She stated that Defendant had videos, photographs, and internet pictures of naked children in his bedroom, living room, and an outbuilding. He also had cameras on the three or four computers in the bedroom and living room. The fifteen-year-old female described Defendant's house in detail and also told Detective Sharpe about Defendant's firearms he kept in his house and vehicle. The fifteen-year-old female stopped going to Defendant's home in January 2003.

Detective Sharpe also interviewed an eight-year-old male who disclosed that Defendant had touched him with his hand by rubbing him between his belly button and his private area. Defendant made him pose for pictures on his bed. The eight-year-old male said that Defendant's camera was on a stand and when he took pictures they would appear on the computer screen.

The affidavit also contained information that Defendant had been investigated in August 2002 for inappropriate touching, and in 1992 he was charged with two counts of indecent liberties with a minor and carrying a concealed weapon.

On 8 September 2004, Sergeant Detective Acosta applied for and received another search warrant—this one to search the computers, CDs, and floppy disks seized during the search of Defendant's home. The affidavit of probable cause to support the search warrant indicated that upon searching Defendant's home, Sergeant Detective Acosta found computer and video equipment in the master bedroom. Sergeant Detective Acosta reviewed one of the 8mm videotapes seized from Defendant's residence and observed Defendant moving the "web camera" around the body of a female child, approximately two to three years old. Another video showed Defendant using a computer in his bedroom while several children were being videotaped engaging in sexual activity on his bed.

On 14 September 2004, Sergeant Detective Acosta applied for and received a third search warrant—this one to search Defendant's home, outbuildings, and vehicles in order to search for, *inter alia*, "[a]ny substance or item which could be used to intentionally intoxicate or sedate a juvenile victim for the purpose of extensively sexually assaulting them." The affidavit to establish probable cause

included facts from the first warrant, along with the following additional facts: On 10 September 2004, Sergeant Detective Acosta met with Dr. Dana Hagele with the Center for Child & Family Health. Dr. Hagele reviewed segments from videotapes seized from Defendant's residence in which Defendant forced his penis in the vagina of two female victims, ages two to three years old, while they appeared to be asleep. The video also showed Defendant inserting his finger into the anus of an approximately two-year-old female victim who appeared to be asleep. Dr. Hagele opined that "throughout the extensive, invasive, potentially painful assault depicted in the videos, neither girl was fully conscious, nor did the[y] demonstrate purposeful movement, vocalization, reflexive movement, or speech, and this was in her opinion consistent with [] intentional intoxication ("drugging")."

Defendant moved to suppress all evidence seized as a result of the three search warrants. After a hearing on the motion to suppress, the trial court denied Defendant's motion. Reserving his right to appeal the trial court's denial of his motion to suppress, Defendant pled guilty to ten counts of statutory sexual offense, two counts of attempted first-degree statutory sexual offense, thirty-eight counts of taking indecent liberties with a child, two counts of first-degree statutory rape, one count of attempted first-degree rape, and thirty-seven counts of first-degree sexual exploitation of a minor. One count of indecent liberties with a child and one count of first-degree sexual exploitation of a minor were dismissed. Defendant was sentenced to six consecutive terms of 288 to 355 months imprisonment.

On appeal from the denial of his motion to suppress, Defendant argues that the trial court erred in denying his motion to suppress the 1 September 2004 search warrant because the information supporting probable cause was stale.[2] We disagree.

"The standard of review in evaluating a trial court's ruling on a motion to suppress is that the trial court's findings of fact 'are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting.' " *State v. Smith*, 160 N.C. App. 107, 114, 584 S.E.2d 830, 835 (2003) (citation omitted). If the trial court's conclusions of law are supported by its factual findings, we will not disturb

---

2. Defendant assigns error to the denial of his motion to suppress with respect to evidence seized pursuant to all three search warrants; however, on appeal he only argues error with regard to the 1 September 2004 warrant. Therefore, his assignments of error relating to the 8 and 14 September 2004 search warrants are deemed abandoned. N.C. R. App. P. 28(b)(6).

those conclusions on appeal. *State v. Logner*, 148 N.C. App. 135, 138, 557 S.E.2d 191, 193-94 (2001). Where an appellant fails to assign error to the trial court's findings of fact, the findings are "presumed to be correct." *Inspirational Network, Inc. v. Combs*, 131 N.C. App. 231, 235, 506 S.E.2d 754, 758 (1998). As Defendant failed to assign error to any findings of fact, our review is limited to the question of whether the trial court's findings of fact, which are presumed to be supported by competent evidence, support its conclusions of law and judgment. *State v. Downing*, 169 N.C. App. 790, 794, 613 S.E.2d 35, 38 (2005); *Okwara v. Dillard Dep't Stores, Inc.*, 136 N.C. App. 587, 591-92, 525 S.E.2d 481, 484 (2000). However, the trial court's conclusions of law are reviewed *de novo* and must be legally correct. *State v. Fernandez*, 346 N.C. 1, 11, 484 S.E.2d 350, 357 (1997).

The Fourth Amendment to the United States Constitution provides that no warrants shall be issued except upon probable cause. U.S. CONST. amend. IV. Moreover, section 15A-244(3) of the North Carolina General Statutes requires that statements of probable cause must be supported by an affidavit "particularly setting forth the facts and circumstances establishing probable cause to believe that the items are in the places or in the possession of the individuals to be searched[.]" N.C. Gen. Stat. § 15A-244(3) (2005).

When addressing whether a search warrant is supported by probable cause, a reviewing court must consider the "totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 238, 76 L. Ed. 2d 527, 548 (1983); *State v. Arrington*, 311 N.C. 633, 641, 319 S.E.2d 254, 259 (1984). In applying the totality of the circumstances test, our Supreme Court has stated that an affidavit is sufficient if it establishes "reasonable cause to believe that the proposed search . . . probably will reveal the presence upon the described premises of the items sought and that those items will aid in the apprehension or conviction of the offender. Probable cause does not mean actual and positive cause nor import absolute certainty." *Arrington*, 311 N.C. at 636, 319 S.E.2d at 256 (citations omitted). Thus, under the totality of the circumstances test, a reviewing court must determine "whether the evidence as a whole provides a substantial basis for concluding that probable cause exists." *State v. Beam*, 325 N.C. 217, 221, 381 S.E.2d 327, 329 (1989); *see also Gates*, 462 U.S. at 238-39, 76 L. Ed. 2d at 548 (concluding that "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis' " to conclude that probable cause existed (citation omitted)). In adhering to this standard of review, we are cognizant that "great deference should be paid [to] a magistrate's deter-

mination of probable cause and that after-the-fact scrutiny should not take the form of a *de novo* review." *Arrington*, 311 N.C. at 638, 319 S.E.2d at 258.

"[I]t is well settled that whether probable cause has been established is based on factual and practical considerations of everyday life on which reasonable and prudent [persons], not legal technicians, act." *State v. Sinapi*, 359 N.C. 394, 399, 610 S.E.2d 362, 365 (2005) (citations and internal quotation marks omitted). "Probable cause is a flexible, common-sense standard. It does not demand any showing that such a belief be correct or more likely true than false. A practical, nontechnical probability is all that is required." *State v. Zuniga*, 312 N.C. 251, 262, 322 S.E.2d 140, 146 (1984).

Defendant argues that the information contained in the affidavit for probable cause was stale because the information provided by the fifteen-year-old female was eighteen to nineteen months old and other depictions of sexual conduct with minors did not have specific time references. When evidence of previous criminal activity is advanced to support a finding of probable cause, a further examination must be made to determine if the evidence of the prior activity is stale. *State v. McCoy*, 100 N.C. App. 574, 577, 397 S.E.2d 355, 358 (1990). "[W]here the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant. The continuity of the offense may be the most important factor in determining whether the probable cause is valid or stale." *Id.* (internal citations omitted).

North Carolina courts have repeatedly held that "young children cannot be expected to be exact regarding times and dates[.]" *State v. Wood*, 311 N.C. 739, 742, 319 S.E.2d 247, 249 (1984). Thus, although the fifteen-year-old and the other minors did not provide specific dates, their allegations of inappropriate sexual touching by Defendant allowed the magistrate to reasonably infer that Defendant's criminal activity was protracted and continuing in nature. *See McCoy*, 100 N.C. App. at 577, 397 S.E.2d at 358.

Furthermore, common sense is the ultimate criterion in determining the degree of evaporation of probable cause. *State v. Jones*, 299 N.C. 298, 305, 261 S.E.2d 860, 865 (1980). "The significance of the length of time between the point probable cause arose and when the warrant issued depends largely upon the property's nature, and should be contemplated in view of the practical consideration of everyday life." *Id.* (citation omitted). Other variables to consider

when determining staleness are the items to be seized and the character of the crime. *State v. Witherspoon,* 110 N.C. App. 413, 419, 429 S.E.2d 783, 786 (1993).

The items sought by the search warrant—computers, computer equipment and accessories, cassette videos or DVDs, video cameras, digital cameras, film cameras and accessories—were not particularly incriminating in themselves and were of enduring utility to Defendant. *See Jones,* 299 N.C. at 305, 261 S.E.2d at 865 (five months elapsed between the time the witness saw the defendant's hatchet and gloves and when he told police; however, since the items were not incriminating in themselves and had utility to the defendant a reasonably prudent magistrate could have concluded that the items were still in the defendant's home). The warrant also sought photographs or printed materials which could be consistent with the exploitation of a minor. Photographs are made for the purpose of preserving an image and to be kept. *See People v. Russo,* 439 Mich. 584, 601, 487 N.W.2d 698, 705 (1992) ("[P]hotographs guarantee that there will always be an image of the child at the age of sexual preference because the photograph preserves the child's youth forever."). There would be no reason to conclude that Defendant would have felt a necessity to dispose of such items. Indeed, a practical assessment of this information would lead a reasonably prudent magistrate to conclude that the computers, cameras, accessories, and photographs were probably located in Defendant's home. *See, e.g, State v. Kirsch,* 139 N.H. 647, 662 A.2d 937 (1995) (probable cause not stale where the defendant's most recent criminal activity and contact with the victims occurred six years prior to issuance of the warrant where the search warrant sought pornographic movies and nude photographs of the minor victims).

In sum, we conclude that the evidence as a whole provided the magistrate a substantial basis for concluding that probable cause existed at the time the search warrant was issued. *See Beam,* 325 N.C. at 221, 381 S.E.2d at 329; *see also Arrington,* 311 N.C. at 638, 319 S.E.2d at 258 (great deference paid to a magistrate's determination of probable cause). Accordingly, we affirm the trial court's denial of Defendant's motion to suppress evidence obtained under the 1 September 2004 search warrant.

Affirmed.

Judges GEER and STEPHENS concur.