STATE OF NORTH CAROLINA v. WALTER EARL FERGUSON, JR.

No. 8726SC1132

(Filed 21 June 1988)

Automobiles and Other Vehicles § 125— driving while impaired—opportunity to have witness to breathalyzer test—witness denied access to defendant—no findings

> Judgment on a conviction for driving while impaired was vacated and the case remanded for further findings where defendant presented evidence that he called his wife to witness the breathalyzer test, she arrived in time but was denied access to defendant, the breathalyzer test was not given, the only evidence against defendant was the personal observations of the authorities, and the trial judge did not make any findings or conclusions concerning the alleged statutory or constitutional violations. N.C. Constitution Art. I, § 23, N.C.G.S. § 15A-954(a).

APPEAL by defendant from *Lamar Gudger, Judge.* Judgment entered 4 September 1987 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 6 April 1988.

*Attorney General Lacy H. Thornburg by Associate Attorney General Linda Anne Morris for the State.*

*John G. Plumides and Daniel J. Clifton for defendant-appellant and Plumides, Plumides and Caudle of Counsel for defendant-appellant.*

BECTON, Judge.

Defendant, Walter Ferguson, was convicted of driving while impaired in violation of N.C. Gen. Stat. Sec. 20-138.1 (1983) and was sentenced to thirty days in jail which was to be suspended upon completion of the Alcohol and Drug Education Traffic School and upon payment of a $100 fine. Defendant appeals. We vacate the judgment and remand for findings of fact and conclusions of law consistent with this opinion.

## I

The State presented evidence that on 2 November 1986, defendant's automobile was observed on highway U.S. 74 in Mecklenburg County at approximately 6:45 p.m. by State Trooper A. J. Fox. Trooper Fox testified that defendant was proceeding ahead of him at a speed of 35 m.p.h., although the maximum speed on the highway was 55 m.p.h. He observed that the car traveled left of the center line several times, then traveled off the road onto the right shoulder. Trooper Fox activated his blue light; defendant proceeded for another half mile, then stopped. Trooper Fox approached the vehicle and found defendant alone in the car behind the steering wheel, his eyes bloodshot, and his pupils dilated. When defendant spoke, he emitted a strong odor of alcohol, and his speech was slurred. Upon the trooper's request, and after some searching, defendant presented his driver's license and registration card. Also upon the Trooper's request, defendant performed two sobriety tests. The first test—known as the gaze test—required the defendant to follow the trooper's fountain pen with his eyes as the pen was moved in front of his face. The second test—known as the sway test—required defendant to stand with his feet together, hands to his side, eyes closed and head tilted back as the trooper observed his balance. Trooper Fox testified that defendant lost his balance and swayed from side to side. He then arrested defendant and transported him to the magistrate's office.

At the magistrate's office, defendant performed another sobriety test which required him to close his eyes and touch his nose with his index finger. When using his right hand, he touched underneath his nose. When using his left hand, he touched the right side of his right nostril with the second joint of his finger. In another test, he was asked to stand on one leg and count to 30.

He did so and proceeded to count to 44. In another test, he was asked to walk in a straight line by placing one foot directly in front of the other. Defendant crossed over his feet, stepped on the insteps of his feet, and swayed from side to side. The trooper then read defendant his Fifth Amendment rights and his rights under N.C. Gen. Stat. Sec. 20-16.2 regarding the breathalyzer test. Defendant telephoned his wife but, the trooper testified, she did not arrive within the required 30 minutes to witness the test. Trooper Fox stated that in his opinion, defendant was under the influence of an impairing substance.

Defendant testified that the trooper advised him of his right to have a witness to observe the breathalyzer test. After a delay, he reached his wife on the telephone, and the police told him that she must arrive within twenty minutes. He informed his wife of the time constraints. The police informed him when the 20 minutes expired, but he did not submit to the test because his wife was not present.

He testified further that he was driving normally before Trooper Fox stopped him. He admitted that he consumed five beers between 3:00 p.m. and 6:15 p.m. at the Charlotte Airport Motel. He testified that the only sobriety test conducted at the scene of his arrest was the gaze test. He stated that he performed correctly all of the tests administered at the jail. He saw his wife when he was released from jail later that evening. She told him she had been waiting for one and one-half hours.

Defendant's wife, Judy Ferguson, also testified on his behalf. She stated that her husband telephoned her after 8:00 p.m. on the night of his arrest. In her opinion, his speech was not slurred, consequently, she had trouble taking him seriously when he asked her to come to the jail. She and her daughter drove immediately to the county jail and arrived within 20 minutes. She told the law enforcement personnel at the desk that she came to witness her husband's breathalyzer test. One woman told her it was too late, that he had already refused the breathalyzer test. No one made any further inquiries. Mrs. Ferguson and her daughter sat in the waiting area for approximately one and one-half hours. Then defendant came out.

## II

Defendant first contends that the trial judge erred by denying his motion to dismiss because he was denied his constitutional and statutory rights of access to a witness to observe the breathalyzer test. This argument by defendant is threefold. Defendant presented evidence that (1) his wife may have arrived within the time required for a witness to the breathalyzer test under Section 20-16.2, (2) his wife was implicitly denied access to him upon her arrival to the jail, and (3) he was denied the opportunity to take the breathalyzer test in the presence of his chosen witness and thereby to obtain evidence for his defense. N.C. Gen. Stat. Sec. 15A-954(a) provides in pertinent part that a trial court "must dismiss the charges stated in a criminal pleading *if it determines* that . . . . (4) [t]he defendant's constitutional rights have been flagrantly violated and there is irreparable prejudice to the defendant's preparation of his case. . . ." (emphasis added). In the instant case, the trial judge did not make any findings of fact or conclusions of law regarding these alleged statutory and constitutional violations. Rather, the following colloquy occurred.

> THE COURT: Ladies and gentlemen, I'm going to ask you to step out of your jury room for just a minute. We have to go through what's called a pre-charge conference at this point, and it will take me about five minutes to conclude that.
>
> (Thereupon, the jury exited the courtroom.)
>
> THE COURT: Let the record reflect at the conclusion of all of the evidence, the defendant moves for motions for dismissal and motion for non-verdict.
>
> MR. PLUMIDES: I want to call to the Court's attention—it has happened before, Judge, people being prevented from going into the jail to confront the defendant, and in this case the defendant's wife. The fact that he is denied the opportunity, not only to have a breatholyzer [sic] witness, to have a witness to testify on his behalf, and this becomes a very serious problem, almost to the point that I would make a motion to exclude all evidence in this case that took place in that jail, because we are denied a constitutional right of confrontation from our witnesses.

Now, because I tell you, there's a case on point, Judge, Kirby (phonetic) I think it was, I went through this argument on the question of whether or not to take a refusal of a breatholyzer [sic], my witness didn't get there in time, and the Judge went into another voir dire to determine—forget the breatholyzer [sic]. Let's assume we were late, but there's a confrontation of a defendant, he has as a matter of right, that somebody should be able to observe him and observe him in the jail, other than the police authorities, to give their views. Had she been allowed, in she could have witnessed the test that the officer gave him after the breatholyzer [sic]. She would—But refusal to permit her to enter, under these circumstances, I would say is almost tantamount to making all of the evidence of the State tainted, and creates a problem in my mind.

THE COURT: You would be able to argue that.

MR. PLUMIDES: There is a case like that, and I'll present it to Your Honor after the fact, if they convict my man. I have had that same identical fact situation. The judge overruled me on the fact she didn't get there in time for the breatholyzer [sic], but the Judge did not find as a fact there was a large lapse of time. But here's where she's denied a hour and a half confrontation as a potential witness for her husband.

THE COURT: Well—

MR. PLUMIDES: And it becomes such a constitutional right, I wish Your Honor would take that into consideration. I don't normally make that argument, but this is a flagrant violation of the rights of this gentleman.

THE COURT: Mr. Plumides, I'm confused as to the circumstances. I understand that Mrs. Ferguson went down to the entry into the area where the Magistrate's Office and the jail are located. I'm not familiar with this county, but I think I have an idea of what area she's talking about because it seems to me some years ago I went into that area once myself for what was then a client of mine. But I think it's regrettable that she did not go to the nearest telephone or pay booth and call and try to re-establish contact with the Magistrate or the jail personnel. I don't know why she didn't take other alternatives.

MR. PLUMIDES: I think we shift the burden to the citizen, Judge. We're making the criminal law—

THE COURT: I don't know.

MR. PLUMIDES: That's the problem.

THE COURT: I don't know what your jailing and administrative policies are. I'm sure there is some method whereby access can be gained to the jail and the Magistrates's Office. I've never heard of a Magistrate's Office not being accessible before in my life. The reason I say that is a Magistrate's Office is a place where persons may go to issue—secure the issuance of warrants, to make complaints, and to get bonds set and take care of a multitude of other things.

MR. PLUMIDES: We have a different system here, fortunately or unfortunately. She went to the right place. I think the District Attorney will agree. She drove down the ramp, went to the right place, because the Magistrate's Office is unconnected. It's on the other side. You don't go through the Magistrate's.

THE COURT: Why didn't she go there?

MR. PLUMIDES: Our Magistrates are concealed behind some windows. You have to knock on the window and hope someone will come answer. We don't have a Magistrate's accessible to us, where, like you do in Asheville, somebody is sitting behind a desk. The only Magistrate available in this court, you have to go here [sic] 9:00 to 5:00 and see about getting a warrant. A little different setup. I don't know if it's good or bad.

THE COURT: I'm not able to judge the whole setup, and that's largely a criminal justice problem.

MR. PLUMIDES: I bring that to your attention. I rest and renew my motions.

THE COURT: I found the evidence here distressing in that regard, because I can see how anyone's wife might confront this problem and be distraught with a child tugging at her skirt, but I don't know. I can't take issue with Mr. Fox on that account.

MR. PLUMIDES: It's not Mr. Fox's fault. It wasn't his fault at all. He had nothing to do with it.

THE COURT: It's regrettable. I would hope that the District Attorney's Office and the Public Defender's Office and the Bar would take care of this matter, open that thing up. You're going to have plenty to talk about. You're going to have an awful lot to talk about, in the absence of Mr. Myers, and I'm expecting to listen to a very good argument.

MR. PLUMIDES: I promise you you'll have one.

THE COURT: But I think insofar as my duty is concerned, might I have the duty to bring this case to a conclusion.

A trial judge's "distress" over the circumstances surrounding a defendant's arrest are of little comfort when not coupled with an application of the relevant law. Nor can the criminal justice system rely on the hope that the local Bar will take measures to ensure the rights of criminal defendants. We therefore remand this case for entry of required findings of fact and conclusions of law regarding the alleged constitutional and statutory violations.

If, on remand, the trial judge finds and concludes that none of defendant's statutory or constitutional rights have been violated then an appropriate judgment should be entered. If, on the other hand, the trial judge should find that Mrs. Ferguson's arrival to the jail was timely and she made reasonable efforts to gain access to defendant, then defendant was denied access to a potential witness. The denial of access to a witness in this case — when the State's sole evidence of the offense is the personal observations of the authorities — would constitute a flagrant violation of defendant's constitutional right to obtain witnesses under N.C. Const. Art. I Sec. 23 as a matter of law and would require that the charges be dismissed. *Cf. State v. Hill*, 277 N.C. 547, 178 S.E. 2d 462 (1971) (defendant's attorney was denied access to defendant after posting bail and asking the jailer to see him. The Court held, because time is of the essence when one is taken into police custody for an offense of which intoxication is an essential element, defendant was unconstitutionally denied the opportunity to confront the State's witnesses with other testimony).

### III

We have considered defendant's three remaining assignments of error and find them to be without merit.

We vacate the judgment and remand for further findings of fact consistent with this opinion.

Judges JOHNSON and GREENE concur.