·STATE OF NORTH CAROLINA v. DEBORAH DUNLAP HATLEY

No. COA07-1091

(Filed 20 May 2008)

**Motor Vehicles— intoxilyzer test—witness—identification at police station front desk**

The trial court erred by denying defendant's motion to suppress the results of an intoxilyzer test where the uncontradicted evidence was that the witness who had been called by defendant timely arrived, identified and described the person she was there to see to the front desk officer, told the front desk officer that the person was there for "DUI," the arresting officer was aware that a witness had been called and was en route, and the witness was kept waiting at the front desk until after the test. There is no authority for the proposition that a potential witness must state unequivocally and specifically that he or she has been called to view the intoxilyzer test.

Appeal by Defendant from order entered 3 May 2007 by Judge Christopher M. Collier in Cabarrus County Superior Court. Heard in the Court of Appeals 5 March 2008.

*Attorney General Roy Cooper, by Assistant Attorney General Tamara S. Zmuda, for the State.*

*Hartsell & Williams, P.A., by Christy E. Wilhelm, for Defendant.*

STEPHENS, Judge.

Defendant pled guilty to driving while impaired in violation of N.C. Gen. Stat. § 20-138.1 after the trial court denied her motion to suppress the results of an intoxilyzer test. Defendant appeals the denial of her motion. Because she specifically notified the State and the trial court of her intention to appeal, Defendant preserved the issue for appellate review notwithstanding her guilty plea. N.C. Gen. Stat. § 15A-979(b) (2005); *State v. McBride*, 120 N.C. App. 623, 463 S.E.2d 403 (1995), *aff'd per curiam*, 344 N.C. 623, 476 S.E.2d 106 (1996).

We first observe that Defendant did not assign error to any of the findings of fact made in the trial court's order denying her motion to suppress. Therefore, our review of the order "is limited to the question of whether the trial court's findings of fact, which are presumed to be supported by competent evidence, support its conclusions of law and judgment." *State v. Pickard*, 178 N.C. App. 330, 334, 631 S.E.2d 203, 206 (citations omitted), *appeal dismissed and disc. review denied*, 361 N.C. 177, 640 S.E.2d 59 (2006). "This Court must not disturb the trial court's conclusions if they are supported by the court's factual findings." *State v. McArn*, 159 N.C. App. 209, 211-12, 582 S.E.2d 371, 373 (2003) (citing *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)). "However, the trial court's conclusions of law are reviewed *de novo* and must be legally correct." *State v. Hernandez*, 170 N.C. App. 299, 304, 612 S.E.2d 420, 423 (2005) (citing *State v. Fernandez*, 346 N.C. 1, 11, 484 S.E.2d 350, 357 (1997)).

The facts of this case are not in dispute and were recounted by the trial court in its findings of fact:

1. On [the evening of] March 6 Officer Rebekah Efird with the Concord Police Department was on routine patrol . . . .

2. [Defendant] was operating a vehicle which was lawfully stopped by the officer after which [Defendant] was arrested for driving while impaired.

3. [Defendant] was transported to the Cabarrus County Sheriff's Office for the purpose of administering an intoxilyzer test.

4. At 3:01 a.m. [Defendant] was advised of her rights pursuant to [N.C. Gen. Stat. § 20-16.2(a)].

5. [Defendant] indicated she wanted to call a witness and was successful in reaching her daughter at approximately 3:04 a.m.

6. [Defendant] informed the officer that her daughter was on her way and was coming from Rowan County.

7. [Defendant] had been previously advised the test could be delayed no more than thirty minutes.

8. It was the arresting officer's habit and normal procedure to inform the front desk duty officer that a witness was expected, however, the officer could not specifically remember if she had done so in this case and the officer believed to be on duty that evening is now deceased.

9. During the waiting period [Defendant] was allowed to call her daughter to ascertain her whereabouts, but [Defendant] was unable to reach her.

10. The test was delayed thirty-four minutes before [Defendant] was asked to submit so as to give [Defendant's] daughter time to arrive.

11. [Defendant] submitted to the test as requested as there was no indication from the front desk that a witness had arrived.

12. The test concluded at 3:37 a.m. with a result of .11.

13. [Defendant] was then taken immediately to the magistrate at which time the officer and [Defendant] encountered [Defendant's] daughter and another female during which time [Defendant] and her daughter were allowed to speak briefly.

14. The arresting officer then directed [Defendant's] daughter and the other female to the magistrate's office and indicated that [Defendant] would most likely be released into their custody as she had been polite and cooperative.

15. [Defendant] was released into the custody of her daughter on a written promise to appear at 4:00 a.m.

16. Amy Hatley, daughter of [Defendant], received the call from her mother requesting her to witness the test at approximately 3:05 a.m. and immediately left her residence and arrived at the Cabarrus County Sheriff's Office approximately fifteen minutes later[.]

17. Upon arriving at the Sheriff's office Ms. Hatley informed the front desk duty officer she was "there for Debra [sic] Hatley."

18. There is no evidence [Defendant] or the arresting officer was aware of the arrival of the prospective witness.

19. Amy Hatley waited approximately fifteen minutes after her arrival at which time she saw her mother and the arresting officer and then was directed to the magistrate's office.

20. At no time did Amy Hatley tell the front desk officer she had been summonsed to witness an intoxilyzer test.

21. [Defendant] offered no evidence she requested another test once she realized her daughter was available to witness such a test.

22. [Defendant] was released very shortly after the administration of the intoxilyzer test to the custody of her daughter who then had an opportunity to observe her and assess her sobriety.

At the conclusion of the suppression hearing, the trial court stated that "[b]ecause [Amy Hatley] did not tell the officer she was there to be a witness," the motion was denied. The trial court concluded that Defendant's statutory rights were not violated and denied her motion to suppress.

Section 20-16.2(a) of the General Statutes states, in pertinent part:

Any law enforcement officer who has reasonable grounds to believe that the person charged has committed [an] implied-consent offense [such as driving while impaired] may obtain a chemical analysis of the person.

Before any type of chemical analysis is administered the person charged shall be taken before a chemical analyst authorized to administer a test of a person's breath or a law enforcement officer who is authorized to administer chemical analysis of the breath, who shall inform the person orally and also give the person a notice in writing that:

. . . .

(6) You may call an attorney for advice and select a witness to view the testing procedures remaining after the witness arrives, but the testing may not be delayed for these purposes longer than 30 minutes from the time you are notified of these rights. You must take the test at the end of 30 minutes even if you have not contacted an attorney or your witness has not arrived.

N.C. Gen. Stat. § 20-16.2(a) (2005). A witness who has been selected to observe the testing procedures must make reasonable efforts to

gain access to the defendant. *State v. Ferguson*, 90 N.C. App. 513, 369 S.E.2d 378, *appeal dismissed and disc. review denied*, 323 N.C. 367, 373 S.E.2d 551 (1988). Although a defendant may waive the statutorily prescribed right to select a witness, the denial of the right requires suppression of the intoxilyzer results. *State v. Myers*, 118 N.C. App. 452, 455 S.E.2d 492, *disc. review denied*, 340 N.C. 362, 458 S.E.2d 195 (1995); *State v. Gilbert*, 85 N.C. App. 594, 355 S.E.2d 261 (1987); *State v. Shadding*, 17 N.C. App. 279, 194 S.E.2d 55, *cert. denied*, 283 N.C. 108, 194 S.E.2d 636 (1973).

In this case, the trial court's findings of fact establish: (1) Defendant was advised of her right to select a witness to view the testing procedures; (2) Defendant did not waive her right; (3) Defendant notified Officer Efird that she had selected and contacted a witness who was on her way to the Sheriff's office to observe the testing procedures; and (4) the witness arrived at the Sheriff's office to observe the testing procedures well within the statutorily allotted thirty minutes. The findings also establish that Amy Hatley did not tell the front desk officer specifically that she was there to witness an intoxilyzer test. Echoing the trial court's pronouncement, the State argues that "since the witness never indicated to anyone that she was at the Sheriff's Department to witness the Intoxilyzer test[,]" Defendant was not deprived of her statutory right. In support of this position, the State principally relies on our unpublished decision in *State v. Lyle*, No. COA02-1140, 2003 WL 21180780 (May 20, 2003).

In *Lyle*, a Highway Patrolman arrested the defendant for driving while impaired and transported the defendant to a law enforcement center. The Trooper brought the defendant to a "test room" to administer an intoxilyzer test and advised the defendant of his right to have a witness present. *Id.* at *2. The defendant unsuccessfully attempted to call his wife to witness the test. Unbeknown to defendant, his wife was in a waiting area outside a dispatcher's office at the law enforcement center. The wife told the dispatcher that "she was there to see the defendant[,]" but the wife was not escorted to the test room. *Id.* at *1. We held that since neither the Trooper nor the defendant knew the wife was present at the law enforcement center, and since the dispatcher did not know the wife was there to witness an intoxilyzer test, the defendant's statutory rights were not violated.

In the present case, by contrast, Officer Efird knew not only that Defendant had contacted a witness but also that the witness was on her way to the Sheriff's office to observe the test. Officer Efird testified that she could not recall whether she alerted the front desk offi-

cer of the witness's impending arrival, but the State contends that she was under no duty to take any positive action to ensure the witness was admitted to the intoxilyzer room. Assuming without deciding that Officer Efird was not, at a minimum, required to alert the front desk officer that a witness was coming to view the administration of the intoxilyzer test, we conclude that Amy Hatley timely arrived and made reasonable efforts to gain access to Defendant, and that, therefore, Defendant's statutory right to have a witness observe the testing procedures was violated.

The front desk officer on duty the night Defendant was brought to the Sheriff's office did not testify at the suppression hearing. Amy Hatley testified, however, as follows:

A. I walked up to the [front desk officer's] window and I told him that I was there for Debbie Hatley.

Q. And what were you directed to do?

A. He asked me what she was there for and I told him a DUI. He asked me what she looked like. I said she was tall and blond. And he said you can step over there and he pointed across the hall. And we just waited. . . .

From this testimony, the trial court found that "Ms. Hatley informed the front desk duty officer she was 'there for Debra Hatley.' " We find no authority for the proposition that a potential witness to an intoxilyzer test must state unequivocally and specifically that he or she has been called to view the test before the witness is permitted to observe the test. Uncontradicted evidence shows that the witness timely arrived; identified and described to the front desk officer the person she was there to see; and told the front desk officer that the person was there for "a DUI." Under the facts of this case, particularly Officer Efird's knowledge that a witness had been contacted and Officer Efird's understanding that the witness was en route to the Sheriff's office to observe the test, the trial court erred in denying Defendant's motion to suppress.

The trial court's order denying Defendant's motion to suppress is reversed. Accordingly, the judgment entered upon Defendant's guilty plea is also reversed.

REVERSED.

Judges McGEE and TYSON concur.