NO. COA13-494

NORTH CAROLINA COURT OF APPEALS

Filed:  4 February 2014

STATE OF NORTH CAROLINA


     v.                           Anson County
                                  No. 09 CRS 1939
GARRY WHITE


Appeal by the State from order entered 16 January 2013 by Judge Tanya T. Wallace in Anson County Superior Court.  Heard in the Court of Appeals 23 October 2013.

> *Attorney General Roy Cooper, by Assistant Attorney General Carrie D. Randa, for the State-appellant.*
>
> *Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Andrew DeSimone, for defendant-appellee.*


McCULLOUGH, Judge.


The State appeals from an order granting defendant's motion to suppress evidence obtained during a checkpoint stop.  For the reasons set forth below, we affirm.

## I.  Background


On 11 September 2009, defendant Garry Anthony White was arrested and charged with one count of driving while impaired in

violation of N.C. Gen. Stat. § 20-138.1 and one count of driving while license revoked in violation of N.C. Gen. Stat. § 20-28.

On 17 October 2011, defendant was convicted in Anson County District Court of driving while impaired and given a six (6) month active sentence. Defendant was also convicted of driving while license revoked and given an active sentence of forty-five (45) days. Defendant appealed the judgments to Anson County Superior Court.

On 12 April 2010, defendant filed a motion to suppress evidence alleging the following:

1. That on or about September 11, 2009, a blue GMC Sonoma was stopped at a checkpoint on High Street in Polkton, North Carolina, by officers with the Anson County Sheriff's Department.

2. There was no reasonable articulable suspicion to stop the afore-mentioned vehicle. The stop of the afore-mentioned vehicle was made without probable cause and was an unreasonable seizure in violation of the Constitution of the United States of America and the North Carolina Constitution.

3. The stop was in contravention of the statutory policy on checking stations and roadblocks set out in G.S. 20-16.3(A).

A hearing on defendant's motion to suppress was held on 10 September 2012. J.R. Horne ("Horne") testified that on 11 September 2009, he was serving as a traffic supervisor for the

Anson County Sheriff's Office and was asked to operate a checking station in Polkton, North Carolina. Horne testified that at that time, the Anson County Sheriff's Department did not have a written policy regarding checking stations, but instead, had an oral policy.[1]

The checking station was designated to be a license checking station located at High Street and College Street in Polkton. Sometime before the checkpoint commenced, Horne wrote a "Traffic Operational Plan" that provided the following: the checkpoint was to begin at 7:55 p.m. on 11 September 2009; Deputy Jenkins and Detective Erdmanczyk would assist Horne in the license checkpoint; all cars coming through the target area would be checked; officers would wear their traffic vests when out of their cars; and that the "Chase Policy" would be in full effect. Horne testified that although he was under the assumption that the checkpoint would conclude around midnight since the stores in Polkton closed around 11:00 p.m., there was no end time indicated in the "Traffic Operational Plan."

Following a briefing held at 7:30 p.m. on 11 September 2009, the checkpoint began at 7:55 p.m. All three officers – Horne, Jenkins, and Erdmanczyk – were present with safety vests on. The

---

[1]The Anson County Sheriff's Department did not have a written policy concerning checking stations until 17 February 2012.

officers were checking both northbound and southbound traffic coming to the checkpoint on High Street, as well as westbound traffic coming from College Street. During the license checkpoint, all three of the officers' vehicles had their blue lights activated. All vehicles coming through the checking station were stopped.

Horne testified that at 8:01 p.m., an individual was arrested and charged with driving while impaired. At 8:24 p.m., Horne left the checking station, accompanied by Officer Jenkins, and transported the arrested individual to the Sheriff's Office. Officer Erdmanczyk stayed at the checking station but did not check any vehicles until Horne and Jenkins returned at 9:57 p.m. From approximately 8:24 p.m. until 9:57 p.m., no vehicles were checked at the checkpoint. At 9:57 p.m., the checkpoint resumed. At 10:56 p.m., defendant was stopped and arrested and the checkpoint concluded around 11:20 p.m.

On 16 January 2013, the trial court entered an order finding the following in pertinent part:

> 1. The day before the actual driver's license check point, Corporal Horne was contacted by Captain Dunn of the Sheriff's Department who requested him to operate as a supervisory officer over a checkpoint.
>
> . . .

3. On September 11, 2009, the Anson County Sheriff's Department had no written policy providing guidelines for motor vehicle law checking stations as mandated by G.S. 20-16.3A.

. . .

5. Corporal Horne did complete a written checking station plan prior to conducting the checkpoint on September 11, 2009. The plan provided for a license check after a briefing at the Polkton Fire Department to commence at 7:55 p.m. at the intersection of High Street and College Street which called for the officers to wear traffic vests, to stop all vehicles coming through the checkpoint, to have at least one vehicle with its blue lights activated, and to operate said checkpoint pursuant to an oral policy that was in force at that time.

6. Corporal Horne testified that the reason for the checkpoint was because there had been complaints by the store owners of speeding and reckless operation of motor vehicles in this area and that this check point was to start at 7:55 p.m. with an anticipated conclusion time of 12:00 a.m., since the stores in the area close at approximately 11:00 p.m.

7. Three (3) officers were assigned to this checkpoint including the traffic unit supervisor Corporal Horne . . . and Corporal Horne testified that all officers were to wear traffic vests, the blue lights on each vehicle were to be activated, that all vehicles were to be stopped coming through this intersection and that the chase policy was to be in force at this checkpoint.

. . .

9. The Defendant was stopped at approximately 10:56 p.m.

10. Prior to the Defendant being stopped, after the checkpoint was established, at 8:24 p.m., a vehicle was stopped which resulted in the arrest of a driver by the name of Ab Griffin for DWI and Corporal Horne testified that between 8:24 p.m. and 9:57 p.m. he and Deputy Jenkins left the checkpoint to process the arrest but left Detective Erdmanczyk at the scene until they returned, however, Detective Erdmanczyk did not continue with the checkpoint or stop any vehicles.

11. At approximately 9:57 p.m. officers Horne and Jenkins returned to the scene of the checkpoint and the checkpoint continued and the officers followed the same procedures in operating the checkpoint as were used prior to the suspension at 8:24 p.m.

. . .

13. The Court is unsure of whether or not there was a suspension of the original checkpoint for a period of almost an hour and a half or whether this is a new stop at 10:56 a.m. with no guidelines or plan in place.

The trial court concluded that

the nature of the stop of the Defendant which occurred after the checkpoint had been abandoned for a period of approximately an hour and a half was in the nature of a spontaneous stop. Coupled with the lack of a written policy in full force and effect and taking into consideration whether a plan was reinstituted, or a new plan instituted, upon the return of the officers to the checkpoint

at 9:27 p.m. mandates a conclusion that there was a substantial violation of G.S. 20-16.3A and the Court hereby orders that all evidence obtained as a result of the stop of the Defendant's vehicle is suppressed.

From this order, the State appeals.

## II. Standard of Review

"Generally, an appellate court's review of a trial court's order on a motion to suppress is strictly limited to a determination of whether its findings are supported by competent evidence, and in turn, whether the findings support the trial court's ultimate conclusion." *State v. Roberson*, 163 N.C. App. 129, 132, 592 S.E.2d 733, 735 (2004) (citation and quotation marks omitted). "Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal." *State v. Taylor*, 178 N.C. App. 395, 401, 632 S.E.2d 218, 223 (2006) (citation omitted).

"While the trial court's factual findings are binding if sustained by the evidence, the court's conclusions based thereon are reviewable *de novo* on appeal." *State v. Parker*, 137 N.C. App. 590, 594, 530 S.E.2d 297, 300 (2000) (citation omitted).

## III. Discussion

The State argues that the trial court erred in granting defendant's motion to suppress where: (A) finding of fact 13 is

not supported by the evidence; (B) there was no substantial violation of N.C. Gen. Stat. § 20-16.3A; and (C) no constitutional violation or violation of Chapter 15A of the North Carolina General Statutes was found. Because arguments (A) and (B) are closely related, we will address them together.

A. Finding of Fact Number 13

and

B. N.C. Gen. Stat. § 20-16.3A

First, the State argues that finding of fact number 13 is not supported by the evidence and thus, does not support the trial court's conclusion of law number 5.

The trial court noted in finding of fact number 13 that:

> 13. The Court is unsure of whether or not there was a suspension of the original checkpoint for a period of almost an hour and a half or whether this is a new stop at 10:56 a.m. with no guidelines or plan in place.

It also concluded in conclusion of law number 5 that:

> 5. That the nature of the stop of the Defendant which occurred after the checkpoint had been abandoned for a period of approximately an hour and a half was in the nature of a spontaneous stop. Coupled with the lack of a written policy in full force and effect and taking into consideration whether a plan was reinstituted, or a new plan instituted, upon the return of the officers to the checkpoint at 9:27 p.m. mandates a conclusion that there was a substantial violation of G.S. 20-16.3A and the Court

> hereby orders that all evidence obtained as a result of the stop of the Defendant's vehicle is suppressed.

We note that during defendant's motion to suppress hearing, there was ample testimony concerning the suspension of the checkpoint for an hour and half, from 8:24 p.m. until 9:57 p.m. Horne testified that at 8:01 p.m., an individual was arrested and charged with driving while impaired. Horne and Jenkins left the checkpoint from 8:24 p.m. until 9:57 p.m. in order to transport this individual to the Sheriff's Office. Horne made a decision that during the time period that he and Jenkins were absent from the checkpoint, "the checkpoint would stop[.]" Erdmanczyk remained at the checkpoint, but did not check any vehicles or licenses during this time at the direction of Horne. The following exchange occurred at defendant's hearing:

> [Defense Counsel:] We have a checking station that was basically – not due to your fault but the fault of, I guess, the driver who allegedly offended the law – that was abandoned by you for almost an hour and a half, where vehicles were free to come and go without being checked; is that correct?
>
> [Horne:] Yes, sir.

In addition, evidence established that defendant was stopped at the checkpoint at 10:56 p.m. Based on the foregoing, we hold that there was sufficient competent evidence to support the trial court's finding of fact 13 and overrule the State's argument.

Even assuming *arguendo* that finding of fact 13 was not supported by the evidence, the State's argument that the trial court erred by making conclusion of law number 5 is without merit. The remaining unchallenged findings of fact, which are binding on appeal, support the trial court's ultimate conclusion that there was a substantial violation of section 20-16.3A of the North Carolina General Statutes.

We call attention to unchallenged finding of fact 3, which provides the following:

> On September 11, 2009, the Anson County Sheriff's Department had no written policy providing guidelines for motor vehicle law checking stations as mandated by G.S. 20-16.3A.

"When findings that are unchallenged, or are supported by competent evidence, are sufficient to support the judgment, the judgment will not be disturbed because another finding, which does not affect the conclusion, is not supported by evidence." *Dawson Industries, Inc. v. Godley Constr. Co.*, 29 N.C. App. 270, 275, 224 S.E.2d 266, 269 (1976) (citation omitted).

Section 20-16.3A of the North Carolina General Statutes, which sets forth the requirements for checking stations and roadblocks, provides that:

> (a) A law-enforcement agency may conduct checking stations to determine compliance with the provisions of this

Chapter. If the agency is conducting a checking station for the purposes of determining compliance with this Chapter, it *must*:

. . .

(2a) *Operate under a written policy* that provides guidelines for the pattern, which need not be in writing. The policy may be either the agency's own policy, or if the agency does not have a written policy, it may be the policy of another law enforcement agency, and may include contingency provisions for altering either pattern if actual traffic conditions are different from those anticipated, but no individual officer may be given discretion as to which vehicle is stopped or, of the vehicles stopped, which driver is requested to produce drivers license, registration, or insurance information. If officers of a law enforcement agency are operating under another agency's policy, it must be stated in writing.

N.C.G.S. § 20-16.3A(a)(2a) (2013) (emphasis added).

It is well established that

[t]he paramount objective of statutory interpretation is to give effect to the intent of the legislature. The primary indicator of legislative intent is statutory language; the judiciary must give clear and unambiguous language its plain and definite meaning. Where the language of a statute is clear and unambiguous there is no room for judicial construction and the courts must give it its plain and definite meaning[.]

*State v. Largent*, 197 N.C. App. 614, 617, 677 S.E.2d 514, 517 (2009) (citations and quotation marks omitted).

We observe that the language used in N.C.G.S. § 20-16.3A(a)(2a) is mandatory – "If the agency is conducting a checking station . . ., it *must* [o]perate under a written policy[.]" (emphasis added). *See State v. Inman*, 174 N.C. App. 567, 570, 621 S.E.2d 306, 309 (2005) (noting that the word "must" in a statute is ordinarily "deemed to indicate a legislative intent to make the provision of the statute mandatory, and a failure to observe it fatal to the validity of the purported action").

In light of the mandatory language contained within N.C.G.S. § 20-16.3A, we conclude that the trial court did not err by concluding that a lack of a written policy in full force and effect at the time of defendant's stop at the checkpoint constituted a substantial violation of section 20-16.3A.

C.   Constitutional Violation or Violation of Chapter 15A

Next, the State argues that "evidence must only be suppressed if there is a Constitutional violation or a substantial violation of the provisions of Chapter 15A. . . . Provisions outside of chapter 15A do not require suppression." The State asserts that even assuming *arguendo* that a violation of N.C. Gen. Stat. § 20-

16.3A occurred[2], the trial court should not have suppressed the evidence obtained at defendant's stop, and doing so amounted to error. We disagree.

The State relies on section 15A-974 of the North Carolina General Statutes, titled "Exclusion or suppression of unlawfully obtained evidence," for its contention. N.C. Gen. Stat. § 15A-974 states that evidence must be suppressed if "(1) Its exclusion is required by the Constitution of the United States or the Constitution of the State of North Carolina; or (2) It is obtained as a result of a substantial violation of the provisions of [Chapter 15A (Criminal Procedure Act).]" N.C.G.S. § 15A-974(a)(1) – (2) (2013).

In response to the State's arguments, defendant directs our attention to subsection (d) of N.C.G.S. § 20-16.3A. In subsection (d), the General Assembly provided that "[t]he placement of checkpoints should be random or statistically indicated, and agencies shall avoid placing checkpoints repeatedly in the same location or proximity." N.C.G.S. § 20-16.3A(d) (2013). Notably, the General Assembly further provided that "[t]his subsection

---

[2]Here, the trial court did not reach the question of the constitutionality of the checkpoint and instead, rested its analysis on the State's violation of section 20-16.3A of the North Carolina General Statues as previously discussed.

shall *not be grounds for a motion to suppress* or a defense to any offense arising out of the operation of a checking station." *Id.* (emphasis added).

A "well-known canon of statutory construction [is] *expressio unius est exclusio alterius*:  the expression of one thing is the exclusion of another." *State v. Dewalt*, 209 N.C. App. 187, 191-92, 703 S.E.2d 872, 875 (2011) (citation omitted).  Applying this principle to the case at hand, we hold that because the General Assembly specifically included language in subsection (d) that it shall not be a basis for a motion to suppress, meanwhile excluding the same language in subsection (a)(2a), subsection (a)(2a) is a proper basis for a motion to suppress.

Furthermore, our Court has held that a violation of another section of Chapter 20 is an appropriate basis for a motion to suppress, despite the lack of express statutory language authorizing suppression.  For example, in *State v. Buckheit*, __ N.C. App. __, __, 735 S.E.2d 345, 347 (2012), our Court reversed a trial court's denial of the defendant's motion to suppress evidence obtained in the violation of section 20-16.2(a) of the North Carolina General Statutes.  *See also State v. Hatley*, 190 N.C. App. 639, 661 S.E.2d 43 (2008) (holding that because the State violated N.C. Gen. Stat. § 20-16.2(a), the trial court should have

granted the defendant's motion to suppress evidence obtained from that violation).

Based on the foregoing analysis, we hold that the trial court did not err by granting defendant's motion to suppress and affirm the order of the trial court.

Affirmed.

Judges DAVIS and ELMORE concur.