An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1265
NORTH CAROLINA COURT OF APPEALS

Filed: 15 July 2014

STATE OF NORTH CAROLINA

v.

TODD EASTMAN BROWN

Cabarrus County
No. 11 CRS 053301

Appeal by defendant from judgment entered 10 January 2013 by Judge Tanya T. Wallace in Cabarrus County Superior Court. Heard in the Court of Appeals 24 April 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Carrie D. Randa and Assistant Attorney General Christopher W. Brooks, for the State.*

> *Rudolf Widenhouse & Fialko, by M. Gordon Widenhouse, Jr., for defendant-appellant.*

HUNTER, JR., Robert N., Judge.

Todd Eastman Brown ("Defendant") appeals from an impaired driving judgment following convictions for driving while impaired and no operator's license. Defendant contends that the trial court erred in denying his pretrial motion to suppress the results of an alcohol breath test because his wife was not allowed to observe the test's administration. Defendant further

contends that the trial court erred in denying one of Defendant's requested jury instructions and in excluding testimony by Defendant's expert witness. For the following reasons, we disagree and find no error.

## I. Factual & Procedural History

On 25 June 2011, at approximately 4:00 a.m., Officer Denan Sabanija ("Officer Sabanija") of the Concord Police Department executed a traffic stop of Defendant's vehicle after discovering that Defendant was driving with an expired license plate tag. When Officer Sabanija approached the vehicle, he noticed a strong odor of alcohol on Defendant's breath and that Defendant appeared to have glassy eyes. Officer Sabanija asked Defendant if he had been drinking, and Defendant conceded that he had a few drinks earlier in the night. Thereafter, Officer Sabanija asked Defendant to step out of the vehicle and administered a field sobriety test. Officer Sabanija indicated that Defendant was barefooted, unsteady on his feet, and that Defendant registered multiple clues of impairment on the field sobriety test.

Based on these facts, Officer Sabanija arrested Defendant for driving while impaired, driving with expired registration

tags, and driving with no operator's license.[1]  Upon arrest, Defendant was taken to the Cabarrus County jail.

Defendant arrived at the jail at approximately 4:30 a.m. He was processed and turned over to Officer Brian Pizzino ("Officer Pizzino"), who was asked to administer an alcohol breath test on Defendant.  Before beginning the testing procedure, Defendant called his wife and left a voicemail indicating that she needed to come to the jail to observe the test being performed.  However, Defendant did not tell Officer Pizzino that he wanted his wife present for the testing procedure.  Both Officer Pizzino and Officer Sabanija indicated that they had no knowledge of Defendant's desire to have his wife present for testing.  Thereafter, Officer Pizzino read Defendant his rights regarding the testing procedure, which Defendant waived by a signed writing.  Officer Pizzino then administered the alcohol breath test, yielding results of 0.15% at 5:07 a.m. and 0.14% at 5:09 a.m.

Meanwhile, at approximately 4:40 a.m., Defendant's wife listened to the voicemail from Defendant requesting her to come to the police station.  By her estimation, it took approximately

---

[1] Defendant was arrested on the charge of no operator's license because Defendant had an existing restriction on his license rendering it invalid if Defendant drives with a blood alcohol concentration greater than 0.04%.

10 minutes for her to get to the police station after she listened to the voicemail. When Defendant's wife arrived at the police station, she attempted to see her husband but was denied access by the magistrate. Neither Officer Pizzino nor Officer Sabanija knew Defendant's wife was present at the station.

Based on the results of the alcohol breath test, as well as other evidence collected by police, Defendant was charged with one count of driving while impaired, one count of driving with expired registration tags, and one count of having no operator's license. After Defendant pled guilty in district court, Defendant appealed to superior court for a trial *de novo*. On 25 July 2012, Defendant filed a motion to suppress the results of the alcohol breath test, arguing that his statutory right under N.C. Gen. Stat. § 20-16.2(a)(6) (2013) to have a witness view the testing procedure was violated when police refused to allow his wife into the testing room. Following a hearing, the trial court entered an order on 20 November 2012 denying Defendant's motion to suppress, concluding that Defendant had waived his statutory right to have a witness present for the testing procedure.

Thereafter, Defendant was tried and convicted of driving while impaired and having no operator's license.[2] On 10 January 2013, the trial court entered an impaired driving judgment sentencing Defendant to 12 months active imprisonment. The sentence was suspended for thirty-six months of supervised probation conditioned on, *inter alia*, Defendant serving an active sentence of seven days in the local jail. Defendant filed a timely notice of appeal.

## II. Jurisdiction

Defendant's appeal from the superior court's final judgment lies of right to this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b), 15A-1444(a) (2013). *See also* N.C. Gen. Stat. § 15A-979(b) (2013) ("An order finally denying a motion to suppress evidence may be reviewed upon an appeal from a judgment of conviction, including a judgment entered upon a plea of guilty.").

## III. Analysis

Defendant's appeal presents three questions for this Court's review: (1) whether the trial court erred in denying Defendant's pretrial motion to suppress; (2) whether the trial court erred in denying one of Defendant's requested jury

---

[2] The charge of driving with expired registration tags was dismissed for a lack of evidence presented by the State.

instructions; and (3) whether the trial court erred in excluding testimony by Defendant's expert witness. We address each in turn.

## A. Motion to Suppress

Defendant's first argument on appeal is that the trial court erred in denying his motion to suppress the results of the alcohol breath test administered by Officer Pizzino because Defendant's wife was denied the opportunity to witness the testing procedure. Specifically, Defendant contends that by denying his wife access to the testing room, his statutory right under N.C. Gen. Stat. § 20-16.2(a)(6) to have a witness view the testing procedure was violated notwithstanding the fact that Defendant executed a signed waiver before the testing procedure relinquishing such right. We disagree.

Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). "Conclusions of law are reviewed *de novo* and are subject to full review." *State v.*

*Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (quotation marks and citation omitted).

Pertinent here, the trial court made the following findings of fact:

> 1. On 25 June 2011 at approximately 4:30 o'clock A.M. Officer Brian Pizzino of the Concord Police Department was on duty in the Cabarrus County Sheriff's office administering an alcohol breath test to another defendant, not the defendant herein, using the EC/IR IR II intoximeter machine. . . . Officer Sabanija, also a member of the Concord Police Department, had stopped the defendant, Todd Eastman Brown, at approximately 4:00 o'clock A.M. on that same day upon suspicion of driving while impaired and had brought the defendant to the intoximeter room at the Cabarrus County Sheriff's office. Officer Sabanija was not qualified to administer tests using the intoximeter machine, and so he requested Officer Pizzino to administer the test to the defendant.
>
> 2. Officer Pizzino informed the defendant of his rights using the form issued by the North Carolina Department of Health and Human Services entitled "Rights of Person Requested to Submit to a Chemical Analysis to Determine Alcohol Concentration or Presence of and [sic] Impairing Substance Under N.C.G.S. 20-16.2(a)." The rights listed on the form are incorporated herein by reference. After being informed of such

rights, the defendant signed the form and waived his rights to call an attorney or another witness.

3. The defendant never stated to either Officer Pizzino or Officer Sabanija that he wanted an attorney or anyone else to witness the intoximeter test. The defendant never told either of these officers that his wife and son were present in the waiting area nearby.

4. The defendant knowingly and voluntarily waived his right to have an attorney or another person witness the administration of the intoximeter test on 25 June 2011.

Based on the foregoing findings of fact, the trial court concluded that Defendant "knowingly and voluntarily waived his rights under N.C. Gen. Stat. § 20-16.2(a), that his motion to suppress should be denied[,] and that the intoximeter test results are admissible in evidence."

On appeal, Defendant challenges the trial court's finding that Defendant waived his statutory right to have a witness view the testing procedure. However, Defendant's brief does not dispute that Defendant actually signed a form waiving his rights. Rather, Defendant challenges whether the signed form has the legal effect of waiving his statutory rights given the fact that he had called his wife to observe the testing procedure prior to signing the document and the fact that his wife was later denied access to the testing room. Defendant

does not challenge the trial court's other factual findings, so we consider these unchallenged findings binding on appeal. *State v. Pickard*, 178 N.C. App. 330, 334, 631 S.E.2d 203, 206 (2006).

Thus, in reviewing Defendant's appeal, we presume the trial court's underlying findings of fact to be correct, but treat the trial court's determination regarding the ultimate question of waiver as a conclusion of law that is reviewed *de novo* on appeal. *See In re R.A.H.*, 182 N.C. App. 52, 60, 641 S.E.2d 404, 409 (2007) ("[I]f [a] finding of fact is essentially a conclusion of law . . . it will be treated as a conclusion of law which is reviewable on appeal." (alterations in original) (quotation marks and citations omitted)). Accordingly, our review is limited to whether the trial court's findings of fact support the conclusion that Defendant waived his rights under the statute.

Pursuant to N.C. Gen. Stat. § 20-16.2(a), before any type of chemical analysis, including an alcohol breath test, is administered to a person charged with an implied-consent offense, the person charged must be informed orally and in writing that, *inter alia*, he or she may "select a witness to view the testing procedures remaining after the witness

arrives," provided the testing is not delayed for such purposes longer than 30 minutes. This statutory right may be waived by the person being tested. *State v. Myers*, 118 N.C. App. 452, 454, 455 S.E.2d 492, 493 (1995). However, absent a waiver, "denial of this right requires suppression of the results of the breathalyzer test." *Id.* Importantly, the burden is on the person arrested for driving while impaired to assert at an early stage an intention to exercise his or her statutory right to have a witness view the testing procedure. *McDaniel v. Div. of Motor Vehicles*, 96 N.C. App. 495, 497, 386 S.E.2d, 73, 75 (1989).

Here, Defendant contends that the trial court's conclusion that he waived his right under the statute is error and that his statutory rights were violated when his wife was denied access to the testing room. Defendant's argument is without merit. The trial court found as fact that Defendant was informed of his statutory rights prior to the testing procedure, that Defendant signed a form waiving his rights, that Defendant never stated to the police that he wanted a witness, and that Defendant never informed police that his wife was present at the station.

Notwithstanding these findings, Defendant cites *State v. Hatley*, 190 N.C. App. 639, 661 S.E.2d 43 (2008), to support the

argument that his statutory rights were violated. In *Hatley*, we reversed the trial court's order denying the defendant's motion to suppress, holding that the defendant's statutory right to have a witness view the testing procedure was violated when the police were aware that the defendant called a witness to observe the test, but denied the witness access to the testing room because the witness failed to specifically identify that she was there to witness the defendant's test.[3] *Id.* at 643–44, 661 S.E.2d at 45–46. In reaching our holding, we stated that "[w]e find no authority for the proposition that a potential witness to an intoxilyzer test must state unequivocally and specifically that he or she has been called to view the test before the witness is permitted to observe the test." *Id.* at 644, 661 S.E.2d at 46.

Here, Defendant seeks to analogize *Hatley* because his witness, Defendant's wife, was also denied access to the testing room. However, in *Hatley*, the defendant did not waive her rights through a signed writing and specifically indicated to police that she had contacted a witness who was en route to the

---

[3] The witness in *Hatley* told the desk officer at the police station that she was there for the defendant and that the defendant was at the station because of "a DUI." *Hatley*, 190 N.C. App. at 644, 661 S.E.2d at 46. The witness failed to specify to the desk officer that she was there to observe an alcohol breath test. *Id.* at 643, 661 S.E.2d at 45.

police station. *Id.* at 643, 661 S.E.2d at 45. Neither is the case here. Defendant explicitly waived his rights in writing and did not tell Officer Pizzino or Officer Sabanija about his wife coming to the police station to witness the testing. Thus, *Hatley* is inapposite. Defendant was informed of his statutory rights under N.C. Gen. Stat. § 20-16.2(a) and given the opportunity to request that his wife be allowed to view the testing procedure. Instead, Defendant explicitly waived his right to have his wife present in a signed writing. Accordingly, Defendant's first argument is overruled.

**B. Jury Instruction**

Defendant's second argument on appeal is that the trial court erred in denying a jury instruction requested by Defendant explaining that the results of a chemical analysis are sufficient, but not conclusive, evidence of impairment. Specifically, Defendant sought an instruction that stated:

> A chemical analysis of defendant's breath obtained from an EC/IR-II which shows an alcohol concentration of 0.08 or more grams of alcohol per 210 liters of breath is deemed sufficient to prove defendant's alcohol concentration. However, such chemical analysis does not compel you to so find beyond a reasonable doubt. You are still at liberty to consider the credibility and/or weight to give such chemical analysis when considering whether defendant's guilt has been proven beyond a reasonable doubt.

The instruction actually provided to the jury was:

> The results of a chemical analysis are deemed sufficient evidence to prove a person's alcohol concentration. You may find the defendant's alcohol concentration to be a .08 or more based upon the result, but you are not compelled to do so.

This Court has recently defined the law with respect to Defendant's argument as follows:

> When a defendant requests a special jury instruction, the trial court is not required to give the requested instruction in the exact language of the request. However, when the request is correct in law and supported by the evidence in the case, the court must give the instruction in substance. Thus, in order for a defendant to establish error, [he or] she must show that the requested instructions were not given in substance and that substantial evidence supported the omitted instructions. The defendant also bears the burden of showing that the jury was misled or misinformed by the instructions given.

*State v. Beck*, ___ N.C. App. ___, ___, 756 S.E.2d 80, 82 (2014) (internal quotation marks, citations, and brackets omitted). We believe *Beck*, which also concerned a driving while impaired conviction, is dispositive of this issue.

In *Beck*, the defendant also requested a special instruction informing the jury that chemical analysis test results are sufficient, but not conclusive, evidence of impairment and that

the jury is allowed to consider the weight to be accorded to such results. *Id.* at ___, 756 S.E.2d at 82. The jury instruction actually used by the trial court in *Beck* was a reproduction of Pattern Jury Instruction 270.20A. *Id.* *Beck* held that it was not error for the trial court to refuse the specific language of the defendant's requested instruction because the pattern jury instruction properly "informed the jury, in substance, that it was not compelled to return a guilty verdict based simply on the chemical analysis results." *Id.* at ___, 756 S.E.2d at 83.

Here, the jury instruction provided by the trial court was also a reproduction of Pattern Jury Instruction 270.20A, except for an additional sentence instructing the jury concerning the chemical test result as follows: "You may find the Defendant's alcohol concentration to be 0.08 or more based upon the result, but you are not compelled to do so." Thus, as evinced by the addition of the foregoing sentence, the jury instruction provided in this case was closer to Defendant's requested instruction than the instruction provided in *Beck*. Even though the trial court did not present Defendant's proposed instruction verbatim, it did present Defendant's instruction in substance because it informed the jury of the proper weight and

credibility to give chemical analysis test results. Accordingly, Defendant's second argument is overruled.

## C. Expert Testimony

Finally, Defendant argues that the trial court erred in excluding expert testimony regarding the effect of gastro-esophageal reflux disease ("GERD"[4]) on alcohol breath test results.[5] We disagree.

> It is well-established that trial courts must decide preliminary questions concerning the qualifications of experts to testify or the admissibility of expert testimony. When making such determinations, trial courts are not bound by the rules of evidence. In this capacity, trial courts are afforded wide latitude of discretion when making a determination about the admissibility of expert testimony. Given such latitude, it follows that a trial court's ruling on the qualifications of an expert or the admissibility of an expert's opinion will not be reversed on appeal absent a showing of abuse of discretion.

*Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 458, 597 S.E.2d 674, 686 (2004) (citations and quotation marks omitted). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).

---

[4] GERD is known colloquially as "acid reflux disease."
[5] Defendant testified at trial that he suffered from GERD.

Here, Defendant sought to admit the testimony of Mr. Julian Douglas Scott ("Mr. Scott"), expert in the application and use of evidentiary breath testing devices, who opined during a *voir dire* examination that Defendant's GERD could possibly cause "a false high breath test reading in this case." Mr. Scott acknowledged that little research has been done in this area and that results go no further than saying that it is possible that GERD could influence test results. After considering Mr. Scott's testimony, the trial court excluded the evidence under N.C. R. Evid. 702(a), stating that "there's not enough testing to even determine whether [the effects of GERD on evidentiary breath testing is] a field of expertise or not" and that Mr. Scott's opinion would be "more confusing than assisting with testimony in front of the jury."

Pursuant to the version of N.C. R. Evid. 702(a) in effect[6] when Defendant was cited for driving while impaired:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill,

---

[6] Rule 702(a) was amended in 2011 and applies to actions arising on or after 1 October 2011. *See* 2011 N.C. Sess. Law ch. 283, § 1.3; *see also State v. Gamez*, ___ N.C. ___, ___, 745 S.E.2d 876, 878–79 (2013). Defendant was cited on 25 June 2011 and thus the old version of the rule applies.

> experience, training, or education, may testify thereto in the form of an opinion.

In interpreting Rule 702(a), our Supreme Court has stated that there is a "three-step inquiry for evaluating the admissibility of expert testimony: (1) Is the expert's proffered method of proof sufficiently reliable as an area for expert testimony? (2) Is the witness testifying at trial qualified as an expert in that area of testimony? (3) Is the expert's testimony relevant?" *Howerton*, 358 N.C. at 458, 597 S.E.2d at 686 (internal citations omitted). As noted above, the trial court grounded its ruling on the first inquiry, concluding, in effect, that Mr. Scott's opinion would not be sufficiently reliable to be considered an appropriate area for expert testimony.

Under the first inquiry, in order to determine whether an expert's area of testimony is considered sufficiently reliable, "[i]nitially, the trial court should look to precedent for guidance in determining whether the theoretical or technical methodology underlying an expert's opinion is reliable." *Id.* at 459, 597 S.E.2d at 687.

> Where, however, the trial court is without precedential guidance or faced with novel scientific theories, unestablished techniques, or compelling new perspectives on otherwise settled theories or techniques, a different approach is required. Here, the trial court should generally focus on the

> following nonexclusive "indices of reliability" to determine whether the expert's proffered scientific or technical method of proof is sufficiently reliable: "the expert's use of established techniques, the expert's professional background in the field, the use of visual aids before the jury so that the jury is not asked 'to sacrifice its independence by accepting [the] scientific hypotheses on faith,' and independent research conducted by the expert."

*Id.* at 460, 597 S.E.2d at 687 (quoting *State v. Bullard*, 312 N.C. 129, 150-51, 322 S.E.2d 370, 382 (1984)).

Here, given the lack of precedent on this issue, the trial court looked to other indices of reliability in determining the admissibility of Mr. Scott's opinion. Specifically, the transcript reveals that the trial court considered the quantity and quality of research backing Mr. Scott's opinion and the number of prior occasions that Mr. Scott had been qualified as an expert on the subject. Of the few studies Mr. Scott cited, all had very small sample sizes that Mr. Scott admitted were "not a very statistically relevant sample." Furthermore, Mr. Scott acknowledged that none of the studies tending to support his opinion provide probabilities concerning the likelihood of GERD affecting alcohol breath test results. The only thing that the studies could say, in Mr. Scott's opinion, was that "it is possible" that GERD has an effect on the test results.

Moreover, Mr. Scott testified that he had only served as an expert in this capacity on one prior occasion. Accordingly, based on the information before the trial court, we cannot say that the trial court's decision to exclude Mr. Scott's opinion was manifestly unsupported by reason or so arbitrary that it could not have been the result of a reasoned decision. The trial court acted within its discretion in deciding that Mr. Scott's opinion as to the "possible" effects of GERD on alcohol breath testing was unreliable and would tend to confuse the issues. Defendant's third argument on appeal is overruled.

## IV. Conclusion

For the foregoing reasons, we find no error in the court below.

NO ERROR.

Judges STROUD and DILLON concur.

Report per Rule 30(e)