An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-666
NORTH CAROLINA COURT OF APPEALS

Filed: 6 May 2014

STATE OF NORTH CAROLINA

v.                                          Wake County
                                            No. 11 CRS 219377
VICTOR NNAMDI INYAMA


Appeal by defendant from judgment entered 15 October 2012 by Judge Paul C. Ridgeway in Wake County Superior Court. Heard in the Court of Appeals 6 January 2014.

*Attorney General Roy Cooper, by Assistant Attorney General Joseph E. Elder, for the State.*

*Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Hannah E. Hall, for defendant.*


McCULLOUGH, Judge.


Victor Nnamdi Inyama ("defendant") appeals the denial of his motion to suppress following the entry of judgment based upon his guilty pleas to possession with intent to sell or deliver marijuana, possession of a firearm by a felon, and attaining the status of an habitual felon. For the following reasons, we affirm.

I.    Background

On 17 August 2011, defendant was arrested on an outstanding warrant for failure to appear on charges of speeding and driving while license revoked at an apartment where marijuana and firearms were found. As a result of the marijuana and firearms, additional arrest warrants were served for possession with intent to sell or deliver marijuana and possession of a firearm by a felon.

On 28 November 2011, a Wake County Grand Jury returned separate bills of indictment indicting defendant on charges of possession with intent to sell or deliver marijuana and possession of a firearm by a felon. The following day, a Wake County Grand Jury also indicted defendant for attaining the status of an habitual felon.

Prior to trial, on 4 October 2012, defendant filed a motion "to suppress any evidence obtained from [his] person, the [apartment] where [he] was arrested, and any statements made by [him] as a result of searches and seizures of his person and/or residence[.]" In the motion, defendant challenged the validity of three warrants issued on 17 August 2011, arguing the warrants were not based on sufficient or legally obtained evidence within the affidavits supporting their issuance. The motion came on to

be heard in Wake County Superior Court before the Honorable Paul C. Ridgeway on 15 October 2012.

Evidence presented during the suppression hearing tended to show that members of the Raleigh Police Department's Gang Suppression Unit became interested in defendant on 16 August 2011 when Dominique McLaughlin, with whom the police had dealt in the past, identified defendant by name as the owner of drugs and firearms found during the search of McLaughlin's residence. The following day, Officer Eddie Camacho ran defendant's name through the warrant database and discovered an outstanding warrant for defendant's arrest for failure to appear on charges of speeding and driving while license revoked. Camacho also realized that he had previously encountered defendant during a traffic stop on 25 May 2011. At the time, defendant was driving a 1998 Cadillac DeVille, license plate number ACC-7005.

DMV records for the vehicle indicated it was registered to Natasha Montgomery of 2721 Milburnie Road. Although the vehicle was registered to Montgomery, Camacho recalled that during his prior encounter with defendant at the traffic stop, defendant acknowledged the car was registered in his girlfriend's name but stressed that it was his vehicle because he paid for it.

In search of defendant, Camacho and another officer went to the address to which the vehicle was registered on Milburnie Road. Montgomery's stepfather, Phillip Becoat, answered the door and spoke with the officers. The officers informed Becoat that they were not searching for Montgomery, but for Montgomery's boyfriend, naming defendant. Becoat responded that defendant and Montgomery "used to live there at 2721 Milburnie Road[,]" but "were [now] living together in an apartment complex off New Bern."

With the information from Becoat, Camacho searched the City of Raleigh's utility records to find the apartment. His search revealed that Montgomery lived at 217 Merrell Drive, Apartment 101.

When the officers arrived at the apartment, they noticed the 1998 Cadillac DeVille and another vehicle registered to Montgomery in the parking lot near the apartment. Upon approaching the front door of the apartment, Camacho could hear male voices inside. Camacho, however, could not understand what the voices were saying or determine how many people were inside. Camacho then knocked on the door. He could hear people frantically moving around inside the apartment, but no one answered the door. Camacho continued to knock and announce

himself for five to ten minutes before calling his supervisor for assistance.

Camacho's supervisor arrived shortly thereafter and knocked on the door. Again, no one responded. Camacho's supervisor then found Montgomery's phone number in a police database and called Montgomery. Montgomery told the officers that she was at work, no one should be inside the apartment, she did not know who was in the apartment, and defendant was last in the apartment a few days earlier. The officers had received a key to the apartment from apartment management, but Montgomery would not consent for the officers to enter the apartment to search for defendant.

At that time, Camacho applied for and obtained a warrant to search the apartment for defendant ("warrant one").

When Camacho returned with warrant one, a Selective Enforcement Unit ("SEU") already on the scene executed the warrant as Camacho and other officers maintained a perimeter. The SEU was made aware that multiple people were inside and defendant had prior firearms violations. The SEU used the key obtained from management to enter the apartment. Upon entry, three men, including defendant, exited a back room of the apartment at the orders of the SEU and were detained outside.

The SEU then performed a protective sweep of the apartment, during which Officer C.R. Matthews noticed what he believed to be a partially smoked marijuana cigarette lying on the floor in one of the bedrooms in plain view. Officer Matthews informed Camacho of the marijuana cigarette and Camacho entered the apartment and, based on its appearance and smell, confirmed that the item on the bedroom floor was in fact a partially smoked marijuana cigarette.

Based on the marijuana cigarette, Camacho applied and obtained a warrant to search the apartment for "controlled substances, paraphernalia, documents indicating dominion or ownership of residence, packaging material, currency, firearms, ammunition, cellular telephones, and any and all evidence relating to the criminal [p]ossession of controlled substances[]" ("warrant two"). During the execution of warrant two, officers found drugs, drug paraphernalia, materials for packaging drugs, firearms, and ammunition in the apartment.

A third warrant ("warrant three") was later issued to search three vehicles in the parking lot, including the 1998 Cadillac DeVille associated with defendant. Additional firearms, marijuana stems, a receipt with defendant's name on

it, and a picture of defendant with a group of people were recovered from the 1998 Cadillac DeVille.

Upon consideration of the testimony, warrant applications, and arguments, the trial court denied defendant's motion in open court stating the following:

> I've reviewed the evidence submitted in this case, the four corners of the search warrants as well as the case law handed up. And with respect to each of the three warrants, I find that, based on the four corners of the application of the search warrant, the magistrate had substantial basis for concluding that there was probable cause to believe that the defendant -- in the case of the first search warrant, the defendant would be found at the location described therein; and with respect to warrants two and three, that evidence of a crime would be found at those locations described therein.

After the trial court announced its decision, defendant preserved his right to appeal the denial of his motion to suppress and pled guilty to possession with intent to sell or deliver marijuana, possession of a firearm by a felon, and attaining the status of an habitual felon. Judgment was entered based on defendant's plea sentencing defendant as an habitual felon to a term of 77 to 102 months imprisonment. Defendant appealed the denial of his motion to suppress.

A written order denying defendant's motion to suppress was later filed by the trial court on 27 November 2012.

## II. Discussion

On appeal, defendant raises various issues with regard to the trial court's denial of his motion to suppress.

Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). "The trial court's conclusions of law . . . are fully reviewable on appeal." *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).

## Findings of Fact

In the first issue raised on appeal, defendant argues the trial court erred in issuing finding of fact number six because it is not supported by competent evidence. Finding of fact number six provides, "Officer Camacho and Officer Carpenter proceeded to 2721 Milburnie Road. At that address, they spoke with Natasha Montgomery's stepfather, Phillip Becoat, who

informed the officers that Victor Inyama was Natasha Montgomery's boyfriend."

Specifically, defendant contends there is no evidence that Becoat informed officers that defendant was Montgomery's boyfriend. In response, the State does not address defendant's precise argument, but instead asserts there was sufficient evidence that defendant was Montgomery's boyfriend and, in the alternative, the finding is not critical to the trial court's denial of defendant's motion to suppress.

Although testimony at the suppression hearing indicated defendant was Montgomery's boyfriend, the testimony does not support the finding that Becoat informed the officers that defendant was Montgomery's boyfriend. During the suppression hearing, Camacho testified as follows:

> I spoke to Ms. Montgomery's stepfather, Philip
> Becoat. . . . He was very cooperative, very polite. He introduced himself as Philip Becoat. He allowed us to go inside and search for Ms. Montgomery. We informed him that we wasn't [sic] looking for her. We were looking for her boyfriend, Victor Inyama.
>
> I spoke to -- actually, Officer Carpenter and I spoke to him. He stated that they used to live there at 2721 Milburnie Road but that he couldn't take their nonsense. I didn't ask him too much what he meant by nonsense. He stated they were living

together in an apartment complex off New
Bern.

While this testimony implies defendant was Montgomery's boyfriend, it is not evidence that Becoat explicitly informed officers that defendant was Montgomery's boyfriend.

However, we agree with the State that the finding was not necessary for a determination of the merits of defendant's motion to suppress. In defendant's motion to suppress, defendant did not seek to suppress evidence by challenging the truthfulness of the affidavits accompanying the warrant applications pursuant to N.C. Gen. Stat. § 15A-978. Instead, defendant sought to suppress evidence on the ground that there was insufficient evidence in the affidavits to establish probable cause to search. "Simply stated, the sole question raised by the defendant's motion to suppress is whether the officer's affidavit was sufficient to support a finding of probable cause for the issuance of a search warrant." *State v. Rutledge*, 62 N.C. App. 124, 125, 302 S.E.2d 12, 13 (1983).

In this case, Camacho's sworn statement in the application for warrant one provided, "Becoat advised that [defendant] is [Montgomery's] boyfriend." Because defendant did not challenge the truthfulness of the sworn statement below, we accept the

evidence in the affidavit as true for the sake of analyzing the remaining issues on appeal.

Moreover, we note that the statement in Camacho's affidavit, that "Becoat advised [defendant] is Montgomery's boyfriend[,]" is not irreconcilable with Camacho's testimony at the suppression hearing. If defendant had challenged the truthfulness of Camacho's affidavit in the motion to suppress, it is likely the State could have produced evidence to support the affidavit.

### Conclusions of Law

In defendant's second, third, and fourth issues on appeal, defendant challenges the trial court's conclusions that the warrants were supported by probable cause. These are the issues raised in defendant's motion to suppress below.

As this Court has explained,

> A valid search warrant application must contain allegations of fact supporting the statement. The statements must be supported by one or more affidavits *particularly setting forth the facts and circumstances establishing probable cause* to believe that the items are in the places or in the possession of the individuals to be searched. Although the affidavit is not required to contain all evidentiary details, it should contain those facts material and essential to the case to support the finding of probable cause. . . . The clear purpose of these requirements for affidavits

supporting search warrants is to allow a magistrate or other judicial official to make an independent determination as to whether probable cause exists for the issuance of the warrant under N.C. Gen. Stat. § 15A-245(b) (2001). N.C. Gen. Stat. § 15A-245(a) requires that a judicial official may consider only information contained in the affidavit, unless such information appears in the record or upon the face of the warrant.

*State v. McHone*, 158 N.C. App. 117, 120, 580 S.E.2d 80, 83 (2003) (quotation marks, alterations, and citations omitted).

When addressing whether a search warrant is supported by probable cause, a reviewing court must consider the totality of the circumstances. In applying the totality of the circumstances test, our Supreme Court has stated that an affidavit is sufficient if it establishes reasonable cause to believe that the proposed search . . . probably will reveal the presence upon the described premises of the items sought and that those items will aid in the apprehension or conviction of the offender. Probable cause does not mean actual and positive cause nor import absolute certainty. Thus, under the totality of the circumstances test, a reviewing court must determine whether the evidence as a whole provides a substantial basis for concluding that probable cause exists. In adhering to this standard of review, we are cognizant that great deference should be paid to a magistrate's determination of probable cause and that after-the-fact scrutiny should not take the form of a *de novo* review.

It is well settled that whether probable cause has been established is based on factual and practical considerations of everyday life on which reasonable and

> prudent persons, not legal technicians, act. Probable cause is a flexible, common-sense standard. It does not demand any showing that such a belief be correct or more likely true than false. A practical, nontechnical probability is all that is required.

*State v. Pickard*, 178 N.C. App. 330, 334-35, 631 S.E.2d 203, 206-07 (quotation marks, citations, and alterations omitted), *appeal dismissed and disc. rev. denied*, 361 N.C. 177, 640 S.E.2d 59 (2006).

Defendant first challenges the trial court's conclusion of law number one regarding the issuance of warrant one. Conclusion of law number one provides:

> With respect to [warrant one], the court concludes that, based upon the four corners of the application for the search warrant, the magistrate had a substantial basis for concluding that there was probable cause to believe that the person named in the warrant would be found at the location described therein.

Defendant argues the trial court erred in issuing this conclusion because the affidavit accompanying the application for warrant one was insufficient to establish probable cause that defendant would be found in the apartment.

Camacho's affidavit in the application for warrant one provided the following statement of facts to establish probable cause:

> On 8/17/2011, I have [sic] been diligently

searching for a wanted subject by the name of Victor NNamdi [sic] Inyama wanted for a speeding [f]ailure to appear warrant (09CR36003). Through our law enforcement data base [sic], I developed information that Mr. Inyama was cited on 5/25/2011 while operating a 1998 Cadillac Deville (ACC7075/NC). Officer Carpenter and I responded to the address assigned to the vehicle which was 2721 Milburnie Rd. The registered owner is Natasha Montgomery. Upon our arrival, [w]e spoke with Mr. Phillip Becoat who is M[s]. Montgomery's step-father [sic]. Mr. Phillip Becoat advised that Mr. Victor Inyama is [M]s. Natasha Montgomery's boyfriend. Through researching [C]ity of Raleigh utilities it was found that Ms. Natasha Montgomery resides at 217-101 Merrell Dr. Prior to conducting a knock and talk I heard items being moved by the front door and muffled speech. Officer Carpenter advised that the shades were open to the patio deck. I began to knock on the door and announcing [sic] myself when I heard subjects frantically moving about the residence. Officer Carpenter then advised that the shades on the patio deck were closed. Through multiple attempts of heavy knocking and announcing myself no one has came [sic] to the door thus far. Ms. Montgomery has two vehicles registered in her name. Both vehicles are on scene including the vehicle that Mr. Inyama was scene [sic] operating. At approximately 3:55 PM Sgt. Palczak spoke with Ms. Montgomery via telephone. She advised no one should be inside her residence located at 217 Merrell Dr. Apt. 101. When I asked who is inside she advised she does not know. She advised suspect Inyama should not be inside the residence and he was last there "a few days ago[.]"[] Ms. Montgomery would not give verbal consent for the police to enter with a key they had

obtained from the apartment management.

Defendant contends this statement of the evidence does not contain a single statement supporting a reasonable belief that defendant was inside the apartment. In support of his argument, defendant distinguishes his case from *State v. Oats*, in which this Court determined grounds for probable cause existed to search the residence of a third party where an informant provided information to police that a suspect would be staying at the residence and police were able to identify a person sitting on the porch of the residence as the suspect, _ N.C. App. _, 736 S.E.2d 228 (2012), *appeal dismissed and disc. rev. denied*, _ N.C. _, 740 S.E.2d 473 (2013), and compares his case to federal cases in which it was determined there was an insufficient basis for a finding of probable cause. *See United States v. Hill*, 649 F.3d 258, 264 (4th Cir. 2011) ("[N]oise coming from inside of a house is not enough to give the police a reason to believe that a defendant is present."); *United States v. Hardin*, 539 F.3d 404, 420-24 (6th Cir. 2008) (holding there was insufficient evidence to form a reasonable belief that a subject would be found in an apartment matching a description given by a confidential informant who claimed to have purchased drugs from the subject in the past where the informant could not

identify the apartment by number, stated the subject would be staying in the apartment if he was staying in the area, and described a vehicle found near the apartment that defendant would likely be driving).

In response to defendant's argument, the State argues that considering the totality of the circumstances, the affidavit included sufficient evidence to establish probable cause that defendant would be found in the apartment. In addition to evidence contained in Camacho's affidavit, the State relies on portions of Camacho's testimony during the suppression hearing that were not included in the affidavit relied on by the magistrate. This evidence included testimony that Camacho was familiar with the 1998 Cadillac DeVille that defendant had previously driven and testimony that Becoat informed officers that defendant lived with Montgomery.

Although we recognize that the State errs in relying on evidence that was not before the magistrate, upon review of Camacho's affidavit, we agree with the State that there was sufficient evidence to establish probable cause.

Despite no direct evidence that defendant was in the apartment, the affidavit considered by the magistrate indicated that the 1998 Cadillac DeVille which defendant was driving on a

prior occasion when he was stopped by police was parked outside of his girlfriend's apartment. A second vehicle registered to defendant's girlfriend was also in the parking lot. Although defendant's girlfriend informed police that no one should be inside the apartment and defendant was last in the apartment a few days earlier, the police could hear several male voices inside the apartment. Defendant's girlfriend indicated she did not know who was inside.

Considering only the evidence within the "four corners" of the affidavit, we hold there was sufficient evidence from which the magistrate could find probable cause to believe defendant was inside the apartment. Therefore, the trial court did not err in concluding there was a substantial basis to support the magistrate's issuance of warrant one.

On appeal, defendant also raises challenges to the trial court's conclusion of law number two regarding the issuance of warrant two. Conclusion of Law number two provides:

> With respect to [warrant two and warrant three], the Court concludes that, based upon the four corners of the applications for the search warrants, the magistrate had a substantial basis for concluding that there was probable cause to believe that evidence of a crime, as described in the warrants, would be found at the locations described therein.

As our courts have long recognized, "affidavits must establish a nexus between the objects sought and the place to be searched.  Usually this connection is made by showing that criminal activity actually occurred at the location to be searched or that the fruits of a crime that occurred elsewhere are observed at a certain place." *State v. McCoy*, 100 N.C. App. 574, 576, 397 S.E.2d 355, 357 (1990) (citation omitted).

In this case, the affidavit accompanying the application for warrant two described in detail the place to be searched. The following statement of facts was then listed as the basis to establish probable cause:  "While executing a search warrant for a wanted person marijuana was in [sic] observed in plain view. Based on this discovery it is my reasonable belief that more narcotics will be located upon a further search."

Defendant argues the trial court erred in concluding there was probable cause to believe evidence of a crime would be found at the apartment because the affidavit accompanying the application for warrant two failed to implicate the premises searched.  Specifically, defendant contends the affidavit does not connect the marijuana to the apartment to be searched and does not specify the location where the officers observed marijuana in plain view.  Therefore, defendant claims the

affidavit is fatally defective. *See State v. Campbell*, 282 N.C. 125, 131, 191 S.E.2d 752, 756-57 (1972) (holding an affidavit that detailed no underlying facts and circumstances from which the issuing officer could find that probable cause existed to search the premises described was fatally defective).

Although the affidavit does not state that the search warrant for defendant was executed at the address identified to be searched, we hold that it is clear from a common sense reading of the affidavit that the place to be searched was the same place searched during the execution of the prior search warrant. Therefore, we hold the affidavit was not fatally defective.

In defendant's final argument on appeal, defendant argues the trial court erred in concluding there was probable cause to believe firearms and ammunition would be found at the apartment based on the discovery of the partially smoked marijuana cigarette.

In support of his argument, defendant cites cases that stand for the proposition that firearms are associated with drug dealers and drug trafficking. Defendant then contends that the partially smoked marijuana cigarette was insufficient, based on the amount of marijuana, to support a finding of probable cause

to believe firearms and ammunition would be found.  We disagree. Where criminal activity has been discovered at the apartment, we find the trial court did not err in concluding there was a reasonable basis for the magistrate to believe firearms would be found.

## III. <u>Conclusion</u>

For the reasons discussed above, we hold there was a substantial basis for the magistrate to determine there was probable cause to issue the warrants.  Therefore, we affirm the denial of defendant's motion to suppress.

Affirmed.

Chief Judge MARTIN and JUDGE ERVIN concur.

Report per Rule 30(e).